The opinion of the court, by
Judge Hitchcock :
In the consideration of this case, I lay out of view the judgments recovered by the Bank of Columbus. The first of these was not followed by an execution sued out and levied in due time; the second was not obtained until after the judgments both of Evans and McCormick.
From the facts agreed in the case, it appears that Joseph Evans, at the March term, 1821, of the court of common pleas, for the county of Clark, recovered judgment against Jonah Baldwin, for the sum of --. To enforce collection, on November 18, 1822, he sued out his writ of fi.fa. et lev. fa., which writ, on the 23d day of the *same month, was levied on a house and lot in Springfield. The property not being sold on this execution, a venditioni was sued out returnable to the March, term of the court of common pleas, 1825. Upon this writ the property was sold to James Bishop for the sum of eight hundred dollars.
On July 21, 1821, the plaintiff, George McCormick, in the same court of common pleas, obtained a judgment against Baldwin and one McKinnen, for the sum of-debt or damages and costs. Upon this judgment a writ of ft. fa. et lev. fa. was issued on January 10, 1822, and levied upon the same house and lot in Springfield. The property not being sold, a vendi. issued ■ on April 10, 1822, and an alias vendi. on January 8, 1824.
From this statement, it will be seen that the judgment of Evans was first recovered ; theji. fa of McCormick first sued out and levied, and the property eventually sold under a vendi. at the suit of Evans. The decision of the case depends upon the determination of the question, whether Evans or McCormick had the preferable lien.
Judgments are not of themselves liens upon property, either real or personal. How far they shall so operate depends upon legislative enactment. Hence, the laws on this subject are different in different states and countries. In some states of this Union, *65 lands are bound for the satisfaction of judgments from the time such judgments are rendered ; in others, -only from the time they have been levied upon by execution. In some states and countries they are sold under execution, in the mode prescribed by law; while in others, they are set off to the judgment creditors at their appraised value; and in others they can neither be sold nor set off, but can only be extended until the rents and profits shall satisfy the debt. In the State of Ohio, from its first settlement, judgments have operated as liens upon the lands and real estate of the judgment debtor. Lands have always been liable to be sold upon execution, under certain conditions and restrictions, prescribed by law. These conditions and restrictions, have been, from time to time, varied as policy seemed to dictate. Since the year 1816, no material alteration has been made in respect to the ^conditions of sale, although there is a great change as to the effect of the lien. In section 2 of the “ act regulating judgments and executions,” passed January 2lst of that year, it is enacted: “ That the lands, tenements, and real estate of the defendant shall be liable to the satisfaction of the judgment from the first day of the term in which said judgment is obtained,” etc. In a proviso to section 7 of the same act, it is declared : “ That judgments voluntarily contested in open court shall only have a lien on lands, tenements, hereditaments, from the day on which they are actually signed or entered.” No time is specified within which the plaintiff shall sue out his execution in order to receive the benefit of his lien. He may do it whenever it suits his convenience. It is worthy too of notice, that, although by this act, all previous laws regulating judgments and executions are repealed, yet it is confined in its operations to judgments only, which may be thereafter rendered — the legislature being peculiarly careful to provide that judgments rendered before its enactment, should be collected according to the laws in force at the time of their rendition.
On February 24, 1820, the legislature enacted another law with a similar title with the one last named. This act, so far as it respects the subject of liens upon lands, tenements, and real estate,” does not vary the act of 1816, except that it confines the liens of judgments upon lands to those lands situate in the county where the judgment is rendered, and provides that when the lands do not lie within the country where the judgment is entered, they shall be like goods and chattels,' only bound from the time they are seized *66 in execution. This act repeals the law of 1816, but, in its operations, is confined to judgments which shall be thereafter obtained, leaving those previously obtained to be collected under the laws in force when they were rendered, except so far as relates to goods and chattels which are not to be sold without appraisal.
During the existence of this law, the two judgments in favor of, Evans and McCormick were obtained, the former being prior in point of time ; and during the existence of the same law, the house and lot in Springfield were seized in execution at the suit of McCormick.
*By the act of February 1, 1822, “regulating judgments and executions,” which repeals the act of 1820, the same principle as to the lien which judgments shall have upon “ lands, tenements and real estate,” is continued as in the last-named act. In section 2 it is provided, however, “that in all cases where the party obtaining judgment shall neglect for one year after the first day of the term, in which such judgment shall have been rendered, to sue out execution thereon, and cause the same to be levied according to the provisions of this act, such judgment shall not operate as a lien upon the debtor’s estate to the prejudice of any other bona fide judgment creditor.” This is the first law, of all those recited, which requires the plaintiff to sue out his execution within speciified time, and it was manifestly the intention of the legislature to ■extend the provisions of this law to judgments which had been .theretofore as well as to those which should be thereafter rendered. For, in section 16 it is expressly enacted, among other things, as follows: “And no judgment heretofore rendered, on which execution shall not be taken out and executed before the expiration of •one year next after the taking effect of this act, shall operate as a ■lien on the estate of any debtor, to the prejudice of any other bona fide judgment creditor.”
Under this latter law, and within six months after it took effect, Evans, on November 18, 1822, sued out his execution, which was levied upon the house and lpt as has been before stated. By pursuing this course, he secured himself, as the law then stood, his lien upon the lands and real estate of the defendant, at least upon .that part of it upon which the execution was levied. And had the ¡property been sold under this execution, or had it been sold while ¿the then existing law remained in force, there can be no doubt but *67 his judgment must have been first satisfied. This would have been the preferable or better lien.
Before the property was sold, however, the law then in force was repealed by the act of February 4, 1824, on the same subject. Section 17 of the last act provides, “ that no judgment heretofore rendered, or which hereafter may be rendered, on which execution shall not have been taken out and levied before the expiration of one year, next %fter the rendition of the judgment, shall operate as a lien on the estate of any debtor, to the prejudice of.', any other bona fide judgment creditor.” It would seem, from an examination of this clause of the statute, that it would be difficult to have made use of words conveying a more definite meaning. Had the words “ heretofore rendered, or which hereafter may be rendered,” been omitted, we should probably come to the conclusion that the statute was intended to apply only to subsequent judgments. Where there is anything doubtful in the statute, it is the duty of the court, in expounding it, to give it such construction as will comport with what is supposed to have been the intention of the enacting power. And where the intention is manifest, but that intention is in part defeated by the use of some particular word or phrase, the court will’look to the intention rather than the words. In the clause of the statute above referred to, however, there is nothing doubtful; nothing ambiguous; no-words made use of which operate to defeat the manifest intention of the legislature. There is, in fact, nothing left for construction. We must apply it according to its literal meaning. Under this statute, the house and lot which had been levied upon by the several executions of Evans and McCormick were sold. The execution of Evans had not “ been taken out and levied before the expiration of one year, next after the rendition of his judgment.” The execution of McCormick had been “ taken out and levied ” within-one year. The judgment of Evans, therefore, would not, under the law, operate as a lien, so far as to prejudice McCormick, provided the latter was a bona fide judgment creditor. That he was such creditor is not disputed. The advantage which Evans possessed at the time of his execution was lost by the repeal of the law then in force, and, under the present existing law, the lien of McCormick must be pronounced the better, or preferable lien.
It is objected, however*, that the law of 1824 can have no effect upon the judgment of Evans, inasmuch as by the recovery of the judgr *68 ment, and the levy of the execution, he had a right vested in him of which he cou.ld not be deprived by legislative enactment. This objection presents an important inquiry, as it calls in question the constitutionality *of the law above referred to, at least so far as relates to all judgments entered prior to the time of its taking effect. There may be, and there undoubtedly are cases, where it is proper, nay, where it is the duty of a court, to refuse to enforce a statute, on the ground that it is inconsistent with the supreme law of the land. Yet this ought not to be done, unless the statute in question is a plain and palpable violation of the constitution. It should be both against the letter and spirit of that instrument. So long as there is a doubt, the decision of the court should be in favor of the statute. Whenever courts, in doubtful cases, undertake to declare Jaws unconstitutional, they may, with propriety, be accused of usurpation. They lose sight of the object for which they were constituted, and interfere with the rights of the people, as represented in a different branch of the government.
In order to dispose correctly of this objection, it is only necessary to ascertain the nature of the right vested in Evans. It was not a right acquired by contract or agreement, it was not one which vested in' him in consequence of the recovery of judgment alone; for, as has been before observed, it is not the necessary consequence of a judgment that it shall operate as a lien upon either real or personal estate. Whether it shall so operate, and how far, depends upon legislative enactment.' Had this right vested in Evans by contract, he could not have been deprived of it, but by his own act. . The legislature are restrained from passing any law which shall impair, or even change the nature of a contract.
Neither can a law regulating judgments and executions be considered as a law which enters into the nature of contracts, or which the parties have in view when they contract. Judgments are recovered as well for injuries sustained by torts, as for those which are sustained by reason of breach of contract. Judgments, too, are recovered not only for breach of contracts entered into in our own state, but for the breach of those which are made in other states and countries. When these judgments are once rendered, they operate equally as liens, without reference to the eonsideration for which they are rendered. The law of the Aplace where a contract is made, or is to be executed, may be said, in a *69 certain degree, to constitute a part of the contract. It is always to be taken into consideration in construing, but never in enforcing the contract. A contract made in Yirginia, and to be executed in that state, must be construed according to the laws of Yirginia; but if that contract is enforced in Ohio, it must be done according to the laws of Ohio. This right, then, was not vested in him by contract, neither was it vested in him by the operation of a law, which could, with propriety, be said to constitute a part of the contract, if, perchance, his judgment was founded upon a contract
- Neither was this right founded in any principle-of natural justice; because if it were founded in natural justice we might suppose all the laws on this subject would be similar in all countries, whereas we find them variant. Further, if natural justice had anything to do with the case, it would seem to dictate that the debt first contracted should be first paid, whereas we well know that the priority of the judgments does not at all depend upon the priority of the demands upon which they are founded. If any creditor suffers, it is generally the one who is most indulgent. Inasmuch, then, as this right was vested in Evans, not by any contract of his own — not by any principle of natural justice — but by the mere operation of a law, which can not, with propriety, be said to enter into the nature of, or constitute a part of the contract, I see no reason for saying that the legislature had not power to repeal this law, thereby depriving him of his right. To determine otherwise would be to curtail very much the power of legislating. It is believed that no laws, especially in new states, are more frequently revised and amended than those relating to judgments and executions. In the short space of eight years, there have been no less than four different statutes on this subject in our own state, each succeeding one repealing the former. Whether such frequent changes are dictated by sound policy, it is not for the court to say; and we are not prepared to say that these sevei*al statutes are or were in whole or in part unconstitutional. It has long been a part of our system, that real estate should not be sold under execution, ^without valuation. Should the legislature repeal this provision of the statute, no doubt an immense majority of the-people would say, and with reason, that such repeal, was impolitic, but few, if any, would say it was in violation of the constitution.
Another objection which has been urged, is, that by giving to the statute its literal meaning, manifest injustice will be done. *70 To this it may be replied that so far as relates to the case before the court, Evans and McCormick have equal equity. They both appear to be bona fide judgment creditors, equally in justice entitled to a satisfaction of their debts. If but one only can be satisfied, it must be him who has obtained a legal advantage. It is easy to conceive, however, that great injustice may be done in consequence of this statute. A creditor previous to 1820 may have recovered a judgment against his debtor. In one year and a day after its rendition he may have taken out his writ of fieri facias and caused it to be levied upon the real estate of his debtor. Repeated attempts may have been made, under the writs of vendi. and alias vendi. to dispose of the property, until at length, in 1824 or 1825, a sale is effected. But the creditor, who for five years has been striving to avail himself of his judgment, finds the property of his debtor swept from him and paid over to another, who recovered a judgment subsequent to the “first of June, 1824.” Again, a creditor previous to the year 1820 may have long had a demand against his debtor. At length he commences his suit and recovers judgment. Having proceeded thus far, being willing to indulge his debtor, and resting secure in his lien, he takes no steps to collect his judgment. At length, under the law of 1822, being fearful of losing his lien, he sues out hi execution and seizes upon the lands of his debtor. These lands are not sold until after June 1, 1824, and then the avails are taken to satisfy a judgment, not only junior in point of time, but a judgment recovered upon a debt contracted long subsequent to the rendition of the prior judgment. The indulgent creditor loses his demand, while the one who is less so is rewarded for what is termed his diligence. These considerations, however, are more properly addressed to a legislature, whose province it is to make, than to a court *whose duty it is to expound law. That the statute may, in some instances, operate unjustly, is no reason why it should not be enforced.
Upon the whole, the court are of opinion, as before expressed, that the lien of McCormick is the better lien, and that judgment must be entered for the plaintiff.†

Note by the Editor. — Eor a summary of the law of judgments and other liens, and of the rules as to priority between incumbrances, see note a, x. H, and the case to which the note is appended. This decision reaffirmed, iii. 336. Same doctrine, vi. 30. See also iii. 136, that a levy under an elder *71 judgment, though after its year, has priority over a junior judgment levied within its year, if the elder’s levy was made before the junior was rendered. •
Between several judgments not levied within a year, there is no priority, and the one first levied afterward gains a priority, iii. 336 and v. 398. For other decisions under this statute, see ii. 135, 395; ix. 142; xiv. 318; xvi. 533; xvii- 518.