SHOVER, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF ESTATE OF HOOD, APPELLANT, *v.* CORDIS CORPORATION, APPELLEE.

[Cite as *Shover v. Cordis Corp.* (1991), 61 Ohio St.3d 213.]

(No. 90–332—Submitted January 22, 1991—Decided July 31, 1991.)

214

*Michael F. Colley Co., L.P.A., Michael F. Colley* and *Kevin J. O'Brien,* for appellant.

*Bieser, Greer & Landis* and *David C. Greer,* for appellee.

HOLMES, J. The issue presented in this appeal is whether fraud may toll R.C. 2125.02(D), Ohio's statute setting forth the time within which to commence wrongful death actions. For the reasons which follow, we answer this query in the negative and affirm the judgment of the court of appeals.

## I

A statute of limitations "bars [a] right of action unless it is filed within [a] specified period of time after [an] *injury* occurs." (Emphasis added.) Black's Law Dictionary (6 Ed.1990) 927, citing *Hanson v. Williams County* (N.D.1986), 389 N.W.2d 319, 321. At R.C. 2125.01, the General Assembly has created an action for wrongful death. Pursuant to this section, an action for wrongful death occurs "[w]hen the death of a person is caused * * *." Death, therefore, is the event which triggers the cause of action.

Further, R.C. 2125.02(D) provides that "[a]n action for wrongful death shall be commenced within two years after the decedent's death." The effect of this provision is to bar wrongful death actions filed two years after the event of death, not two years from the date the plaintiff realized he was injured. Accordingly, we conclude that the legislature intended that wrongful death actions be brought within two years regardless of the date of discovery of the cause of the death. R.C. 2125.02(D).

## II

At common law, there is no action for wrongful death. *Keaton v. Ribbeck* (1979), 58 Ohio St.2d 443, 12 O.O.3d 375, 391 N.E.2d 307; *Rubeck v. Huffman* (1978), 54 Ohio St.2d 20, 8 O.O.3d 11, 374 N.E.2d 411; *Klema v. St. Elizabeth's Hospital* (1960), 170 Ohio St. 519, 11 O.O.2d 326, 166 N.E.2d 765; *Sabol v. Pekoc* (1947), 148 Ohio St. 545, 549, 36 O.O. 182, 183, 76 N.E.2d 84, 87. Today, however, an action for wrongful death is a statutorily created right. *Collins v. Yanity*[1] (1968), 14 Ohio St.2d 202, 207, 43 O.O.2d 301, 304, 237 N.E.2d 611, 614. The wrongful death statute "is an innovation to the principles of the common law and affords the only civil remedy to compensate others for death resulting from injuries." *Karr v. Sixt* (1946), 146 Ohio St. 527, 32 O.O. 14, 67 N.E.2d 331, paragraph two of the syllabus. As such, an

---

1. In *Collins v. Yanity* (1968), 14 Ohio St.2d 202, 207, 43 O.O.2d 301, 304, 237 N.E.2d 611, 614, we stated that:

"* * * An action for wrongful death is brought pursuant to * * * Sections 2125.01 and 2125.02, Revised Code, which create the right of action, define it and specify the time within which such action must be brought. Without those statutes, there would be no cause of action for wrongful death in Ohio."

action for wrongful death must be exercised only under the specific conditions imposed by the statute. *Rubeck v. Huffman, supra.*

In Ohio, a plaintiff may bring a wrongful death claim, " * * * when the death of a person is caused by wrongful act, neglect, or default which would have entitled the party injured to maintain an action and recover damages if death had not ensued, the person who would have been liable if death had not ensued * * * shall be liable to an action for damages, notwithstanding the death of the person injured * * *." R.C. 2125.01.

The time period within which a plaintiff may bring a wrongful death claim, however, is not unlimited. Pursuant to R.C. 2125.02(D), "[a]n action for wrongful death *shall be commenced within two years* after the decedent's death." (Emphasis added.) Compliance with the period of limitation for wrongful death claims is a condition precedent to the right to maintain the action. *Sabol v. Pekoc, supra; Bazdar v. Koppers Co., Inc.* (N.D.Ohio 1981), 524 F.Supp. 1194; *Johnson v. Koppers Co.* (N.D.Ohio 1981), 524 F.Supp. 1182. Moreover, in construing the language in R.C. 2125.02 we have observed that it " * * * expresses an integral element of the right of the action itself and if an action is not brought within two years from the death of the decedent it must fail, not because a statute of limitations provides the time within which it must be brought but because the time limit is the very essence of the action." *Sabol v. Pekoc, supra,* 148 Ohio St. at 552, 36 O.O. at 185, 76 N.E.2d at 88.

In this case, appellant's decedent died on June 28, 1984. Appellant's wrongful death claim, however, was not filed until January 23, 1989. The cause of action accrued on the date of death. Because appellant failed to file his claim within the prescribed statutory time frame, he has not pled all the necessary elements of the action and, therefore, he has no wrongful death claim.

## III

Appellant contends, however, that the appellee's fraud should toll R.C. 2125.02(D) and expand the time within which he can bring his claim. This court has historically rejected this argument, and we are unpersuaded to change our position today.

A number of prior cases decided within this state have held that "[a] fraudulent concealment by which the plaintiff has been delayed will not enlarge the time for bringing an action under the statute of limitations." *Johnson v. Koppers Co., supra; Shrewsbury v. Smith* (C.A.6, 1975), 511 F.2d 1058; *Sabol v. Pekoc, supra; Fee's Admr. v. Fee* (1841), 10 Ohio 470, syllabus. It has also been held that fraud may toll a statute of limitations only where fraud is the gist of the action. *Baldridge v. Toombs* (1962), 118 Ohio App. 229, 25 O.O.2d 70, 189 N.E.2d 635.

In the case *sub judice,* appellant brought a wrongful death claim against appellee. A wrongful death claim does not have its inception in fraud, but rather is based upon "the death of a person." R.C. 2125.01. Accordingly, we conclude that fraud will not enlarge the statutory period within which appellant is required to file his wrongful death claim.

Such result, however, does not preclude the appellant from bringing a cause of action in fraud,[2] separate and independent from wrongful death. This fraud claim may be brought pursuant to R.C. 2305.21, which states, "[i]n addition to the causes of action which survive at common law, causes of action * * * for deceit or fraud, also shall survive; and such actions may be brought notwithstanding the death of the person entitled or liable thereto." Although a cause of action for the tort of fraud must be brought within four years from the time the cause accrued, the cause does not accrue until the fraud and the wrongdoer are actually discovered. (R.C. 2305.09.) *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 23 OBR 200, 491 N.E.2d 1101, paragraph three of the syllabus. In addition, it has long been the rule in our state that "[a] person injured by fraud is entitled to such damages as will fairly compensate him for the wrong suffered; that is, the damages sustained by reason of the fraud or deceit, and which have naturally and proximately resulted therefrom." *Foust v. Valleybrook Realty Co.* (1981), 4 Ohio App.3d 164, 166, 4 OBR 264, 267, 446 N.E.2d 1122, 1126. See *Molnar v. Beriswell* (1930), 122 Ohio St. 348, 8 Ohio Law Abs. 306, 171 N.E. 593, paragraph one of the syllabus; *Bartges v. O'Neil* (1861), 13 Ohio St. 72, 77–78; *Bartholomew v. Bentley* (1846), 15 Ohio 659.

In this case, appellant claims that he first discovered the appellee's fraudulent concealment of the pacemaker's defects on September 1, 1988. Therefore, pursuant to R.C. 2305.09, appellant has until September 1, 1992 to file a cause of action for the tort of fraud against appellee.

## IV

Appellant also contends that the discovery rule for bodily injury actions, as articulated by this court in *O'Stricker v. Jim Walter Corp.* (1983), 4 Ohio

---

2. " * * * The elements of fraud are: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. * * * " *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 23 OBR 200, 491 N.E.2d 1101, paragraph two of the syllabus; *Cohen v. Lamko, Inc.* (1984), 10 Ohio St.3d 167, 10 OBR 500, 462 N.E.2d 407.

St.3d 84, 4 OBR 335, 447 N.E.2d 727,[3] should be extended and applied to wrongful death claims. We disagree with his contention.

The discovery rule has traditionally been limited by case law to malpractice actions where the plaintiff in such actions may remain unaware of his or her injuries until some time in the future. *O'Stricker v. Jim Walter Corp., supra; Melnyk v. Cleveland Clinic* (1972), 32 Ohio St.2d 198, 61 O.O.2d 430, 290 N.E.2d 916. Such is not the case, however, in a claim for wrongful death. When death occurs following an incident, the basic element of a wrongful death action, *i.e.*, the death, is a known factor and the survivors may proceed to determine the cause of death.

Moreover, the right to relief in wrongful death is based upon a special statutory action created by the General Assembly at R.C. 2125.01 *et seq.* Under Ohio law, it is a cardinal rule that a court must first look to the language of the statute itself to determine the legislative intent. If that inquiry reveals that the statute conveys a meaning which is clear, unequivocal and definite, at that point the interpretative effort is at an end, and the statute must be applied accordingly. *Provident Bank v. Wood* (1973), 36 Ohio St.2d 101, 105–106, 65 O.O.2d 296, 298, 304 N.E.2d 378, 381. Courts are directed to give effect to the words of a statute and not to modify an unambiguous statute by deleting words used or inserting words not used. *Bernardini v. Bd. of Edn.* (1979), 58 Ohio St.2d 1, 4, 12 O.O.3d 1, 3, 387 N.E.2d 1222, 1224; see *Gulf Oil Corp. v. Kosydar* (1975), 44 Ohio St.2d 208, 215–216, 73 O.O.2d 507, 511, 339 N.E.2d 820, 824.

R.C. 2125.02(D) states that "[a]n action for wrongful death shall be commenced within two years after the decedent's death." Since the wording of this provision is clear and unambiguous, there is no room for judicial interpretation. See *State, ex rel. Stanton, v. Zangerle* (1927), 117 Ohio St. 436, 159 N.E. 823; *Swetland v. Miles* (1920), 101 Ohio St. 501, 130 N.E. 22; *McCormick v. Alexander* (1825), 2 Ohio 65. Accordingly, we cannot interfere with legislative intent by expanding the two-year period as codified by the General Assembly at R.C. 2125.02(D).

In addition, " '[i]t is well settled * * * that the legislature has the power to increase the period of time necessary to constitute a limitation, and also to make it applicable to existing causes of action, provided such change is made

---

3. In *O'Stricker v. Jim Walter Corp.* (1983), 4 Ohio St.3d 84, 4 OBR 335, 447 N.E.2d 727, this court held in paragraph two of the syllabus that:

"When an injury does not manifest itself immediately, the cause of action does not arise until the plaintiff knows or, by the exercise of reasonable diligence should have known, that he had been injured by the conduct of defendant, for purposes of the statute of limitations contained in R.C. 2305.10."

before the cause of action is extinguished under the pre-existing statute of limitations.'" *O'Stricker v. Jim Walter Corp., supra,* at 86–87, 4 OBR at 337, 447 N.E.2d at 729. Accordingly, we conclude that had the General Assembly intended to apply the discovery rule to toll R.C. 2125.02(D), it could have achieved this objective legislatively. Since the General Assembly has not seen fit to legislatively engraft the discovery rule onto R.C. 2125.02(D), we cannot accept appellant's invitation to judicially broaden the discovery rule. Accordingly, we reject appellant's claim.

### V

As his final proposition of law, appellant argues that R.C. 2125.02(D), as applied to bar his wrongful death claim, is unconstitutional. According to the appellant, R.C. 2125.02(D), as it purports to limit or prevent the use of the discovery rule in wrongful death cases, violates the "Right to Remedy Provision," Section 16, Article I, Ohio Constitution, and the Equal Protection Clause of the Ohio Constitution, Section 2, Article I.

In addressing this claim, we begin our inquiry with the basic legal principle that Acts of the General Assembly are presumed valid under Ohio law, and in cases of doubt should be held constitutional. See *State v. Dorso* (1983), 4 Ohio St.3d 60, 61, 4 OBR 150, 151, 446 N.E.2d 449, 450; *Peebles v. Clement* (1980), 63 Ohio St.2d 314, 321, 17 O.O.3d 203, 207, 408 N.E.2d 689, 693; *State, ex rel. Taft, v. Campanella* (1977), 50 Ohio St.2d 242, 246, 4 O.O.3d 423, 425, 364 N.E.2d 21, 24.

Appellant maintains that R.C. 2125.02(D) violates Section 16, Article I, Ohio Constitution, which states:

"All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law and shall have justice administered without denial or delay." Section 16 of Article I has been described as "equivalent to the due process clause [of the Fourteenth Amendment]." *Saultz v. Funk* (1979), 64 Ohio App.2d 29, 39, 18 O.O.3d 19, 25, 410 N.E.2d 1275, 1281; *Barnhardt v. Linzell* (1957), 104 Ohio App. 243, 4 O.O.2d 391, 148 N.E.2d 242.

The effect of R.C. 2125.02(D) is to prevent what might otherwise be a cause of action from ever arising. Thus, damages which are realized more than two years after the date of death form no basis for recovery. The harm that has been done is *damnum absque injuria*—a wrong for which the law affords no redress.

In this case, appellant failed to file his wrongful death claim within the two-year period as required by R.C. 2125.02(D). Since appellant had no vested

right in his wrongful death claim, he has nothing upon which to base his denial of a remedy challenge. *Johnson v. Koppers Co., supra.*

Appellant also challenges the constitutionality of R.C. 2125.02(D) under the Equal Protection Clause of the Ohio Constitution for the first time on appeal to this court. It is axiomatic, however, that issues not presented for consideration below will not be considered by this court on appeal. *Hoffman v. Staley* (1915), 92 Ohio St. 505, 112 N.E. 1084; *Clarington v. Althar* (1930), 122 Ohio St. 608, 174 N.E. 251; *State, ex rel. Babcock, v. Perkins* (1956), 165 Ohio St. 185, 59 O.O. 258, 134 N.E.2d 839, paragraph three of the syllabus; *Hamlin v. McAlpin Co.* (1964), 175 Ohio St. 517, 26 O.O.2d 206, 196 N.E.2d 781, paragraph one of the syllabus; *State, ex rel. Royal, v. Columbus* (1965), 3 Ohio St.2d 154, 155, 32 O.O.2d 147, 148, 209 N.E.2d 405, 407; *State v. Phillips* (1971), 27 Ohio St.2d 294, 302, 56 O.O.2d 174, 178, 272 N.E.2d 347, 352; *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364, paragraph two of the syllabus; *State v. Barker* (1978), 53 Ohio St.2d 135, 147–148, 7 O.O.3d 213, 220, 372 N.E.2d 1324, 1333; *State v. Cornely* (1978), 56 Ohio St.2d 1, 4, 10 O.O.3d 1, 2, 381 N.E.2d 186, 189; *Hospitality Motor Inns, Inc. v. Gillespie* (1981), 66 Ohio St.2d 206, 208, 20 O.O.3d 209, 210, 421 N.E.2d 134, 136, at fn. 2; *Cascioli v. Central Mut. Ins. Co.* (1983), 4 Ohio St.3d 179, 180, 4 OBR 457, 458, 448 N.E.2d 126, 127, at fn. 2; *Foran v. Fisher Foods, Inc.* (1985), 17 Ohio St.3d 193, 194, 17 OBR 430, 431, 478 N.E.2d 998, 999; *State v. Byrd* (1987), 32 Ohio St.3d 79, 87, 512 N.E.2d 611, 620. As a result, appellant has waived his equal protection claim.

Because we conclude that appellant's arguments have no merit, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., WRIGHT and H. BROWN, JJ., concur.

SWEENEY, DOUGLAS and RESNICK, JJ., dissent.

SWEENEY, J., dissenting. In my view, the majority opinion has the unfortunate effect of depriving countless numbers of aggrieved persons of the full measure of redress that was intended to be available to them under Ohio law. Therefore, I must vigorously dissent from the majority's refusal to apply the discovery rule to wrongful death actions, especially under circumstances where it is clear that a fraudulent concealment has taken place.

The fundamental flaw in the majority's analysis is that it fails to comprehend the essence of a wrongful death action. Contrary to the majority's analysis, it is not merely a death which triggers the cause of action provided for under R.C. 2125.01, but rather " * * * the death of a person * * * caused by wrongful act, neglect, or default * * *." By focusing solely on the fact

that a death occurred, the majority's refusal to apply the discovery rule in these situations ignores the fact that such an action is brought not merely because a death took place, but because such death was also *wrongful*. It is abundantly clear under the plain language of the statute that not all deaths that take place are permitted a cause of action under R.C. 2125.01 *et seq.;* only those that are *wrongful* are permitted a form of redress. It is incredible that the majority does not even acknowledge such a fundamental distinction.

Under the facts *sub judice*, the plaintiff had absolutely no reason to believe that his mother's death was wrongful until he became aware of the fraudulent concealment by appellee with respect to the defects in the pacemaker implanted in the decedent's body. By refusing to permit a discovery rule in this context, the majority not only prevents a legitimately aggrieved plaintiff from receiving the full measure of redress allowed under law, but it essentially excuses (and rewards) unscrupulous parties from having to answer fully for their fraudulent misdeeds. Herein, the majority decision has cut off plaintiff's right-to-a-remedy before he even was aware that it existed. Thus, I believe that the majority's application of R.C. 2125.02(D) to the facts herein violates Section 16, Article I, Ohio Constitution. Cf. *Hardy v. VerMeulen* (1987), 32 Ohio St.3d 45, 512 N.E.2d 626.

Therefore, I would adopt a discovery rule to wrongful death actions where fraud has prevented the discovery of the fact that the death which occurred was indeed wrongful. In so doing, I would overrule the law enunciated in *Sabol v. Pekoc* (1947), 148 Ohio St. 545, 36 O.O. 182, 76 N.E.2d 84, and other like precedents since they clearly undermine the right-to-a-remedy provision of the Ohio Constitution.

Accordingly, I would reverse the decision of the court of appeals below, and remand the cause for further proceedings to determine the justiciability of plaintiff's action in light of the discovery rule applicable to a wrongful death action brought pursuant to R.C. 2125.01 *et seq.*

DOUGLAS and RESNICK, JJ., concur in the foregoing dissenting opinion.

DOUGLAS, J., dissenting. The syllabus law, and the discussion supporting that law, announced in today's case, compel me to vigorously dissent. So that the impact of what the majority is saying in this case does not escape (not that it could) any interested and knowledgeable reader, I repeat herein the syllabus in its entirety.

The majority holds that *"[n]either fraud* nor the discovery rule can toll R.C. 2125.02(D), Ohio's statute setting forth the time within which to commence wrongful death actions." (Emphasis added.) It is difficult to conceive that the highest court of this state would place its judicial imprimatur on such a

rule of law. It is even more difficult to comprehend when the law underlying the holding is reviewed, analyzed and understood.

## I

In 1983, Mrs. Hood had a heart pacemaker surgically implanted in her. In early 1984, the Federal Food and Drug Administration issued a recall of certain heart pacers, including the model which had been implanted in Mrs. Hood. Of course, the manufacturer of Mrs. Hood's pacer knew of the recall and had, in fact, several months earlier issued its own recall. It is undisputed that Mrs. Hood's heart pacer was registered with the manufacturer, Cordis Corporation, but that Mrs. Hood was never notified of the recall of that pacemaker.

Four months later, on June 28, 1984, Mrs. Hood died. It was not until September 1, 1988, that Mrs. Hood's son discovered, after reading a newspaper article in the Dayton Daily News, that certain former officials of the Cordis Corporation had been indicted for allegedly conspiring to cover-up pacemaker defects. In addition, the article indicated that the corporation had pled guilty in federal court in Miami, Florida, to charges of concealing defects in thousands of heart pacemakers.

Within five months after this discovery, suit was filed on behalf of the estate of Mrs. Hood. Included in plaintiff's causes of action was one for wrongful death. R.C. 2125.02(D) provides that an action for wrongful death must, to be timely, be filed within two years of the death of the decedent. The trial court and the court of appeals dismissed the wrongful death action on the basis of the limitation in R.C. 2125.02(D).

Thus, the representative of Mrs. Hood's estate is faced with the situation that a wrongful death claim which he, the personal representative, did not know existed, was extinguished (prohibited) before its existence was ever discovered. Mrs. Hood died on June 28, 1984. By virtue of R.C. 2125.02(D), as interpreted by the majority, the wrongful death action became barred after June 28, 1986. The discovery that there was a cause of action was not made until September 1, 1988.

It was the *fraud* of the defendant, Cordis Corporation, which prevented the discovery. It is this fraudulent action of the defendant that this court today says may be used by the defendant as a defense to the action for wrongful death. Incredible!

## II

Before proceeding to the underlying issue and law of this case, there are two preliminary matters that need to be noted.

## A

I applaud the majority for at least finding that their ruling " * * * does not preclude the appellant from bringing a cause of action in fraud, separate and independent from wrongful death. * * * " (Footnote omitted.) This, of course, is not the issue or even *an* issue in this case and the parties have neither briefed nor argued the issue. I suspect that this finding by the majority is meant to soften the blow delivered to the law of Ohio by the syllabus of the case. The problem is that the rights of parties and the parties themselves affected by a wrongful death (per R.C. Chapter 2125) are not the same as those that accrue in an action for fraud—although arguably, on remand, in this case, the remedies could, and hopefully would, be equated.

## B

It is difficult to tell if the majority finds R.C. 2125.02(D) to be a statute of repose or one of limitation. The majority says that " * * * [p]ursuant to this section, an action for wrongful death *occurs* '[w]hen the death of a person is caused * * *.' " (Emphasis added.) Of course, the use of the word *"occurs"* as opposed to the word *"accrues"* is a distinguishing feature between statutes of repose and those of limitation. However, the majority then, later in its opinion in discussing the "discovery" rule, cites cases such as *O'Stricker v. Jim Walter Corp.* (1983), 4 Ohio St.3d 84, 4 OBR 335, 447 N.E.2d 727, and *Melnyk v. Cleveland Clinic* (1972), 32 Ohio St.2d 198, 61 O.O.2d 430, 290 N.E.2d 916, which involve statutes of limitation. To me, it makes little difference what the majority calls R.C. 2125.02(D)—repose or limitation— because I believe that even if R.C. 2125.02(D) is constitutional (and I think it is not) the discovery rule should be applied to R.C. 2125.02(D)—whatever its nomenclature.

In this section of this dissent I am not yet concerned, however, with the "discovery" rule. That will soon follow. I am concerned (alarmed would better express my feeling) with two statements of the majority.

The first of these is that "[t]he discovery rule has traditionally been limited by case law to malpractice actions where the plaintiff in such actions may remain unaware of his or her injuries until some time in the future." As authority for this statement, the majority cites *O'Stricker* and *Melnyk.*

Two things are alarming. First, the statement is *not* true and, secondly, neither *O'Stricker* nor *Melnyk* stands for the proposition for which it is cited by the majority.

Certainly, *O'Stricker* and *Melnyk* (and the *leading* case not cited by the majority of *Oliver v. Kaiser Community Health Found.* [1983], 5 Ohio St.3d

111, 5 OBR 247, 449 N.E.2d 438) stand for the proposition that the "discovery" rule is applicable to the statute of limitations covering medical malpractice. *None* of these cases, however, says that "[t]he discovery rule has *traditionally been limited* by case law to malpractice actions * * *." (Emphasis added.) There is a good reason these cases do not say that. That reason is that it "ain't so"!

As an example, consider R.C. 2305.09, the four-year statute of limitations on certain torts. R.C. 2305.09(D) specifically provides that: " * * * If the action is for trespassing under ground or injury to mines, or for the wrongful taking of personal property, the causes thereof shall not *accrue* until the wrongdoer is discovered; *nor, if it is for fraud, until the fraud is discovered.*" (Emphasis added.) We have interpreted the word "accrue" to mean when the injury or damage is discovered or should have been, with reasonable diligence, discovered.

While there are a legion of cases which show that the discovery rule has not, traditionally, just been limited to malpractice actions, three will suffice. In *Cincinnati Gas & Elec. Co. v. General Elec. Co.* (S.D.Ohio 1986), 656 F.Supp. 49, 74, a utility filed a fraud claim against a manufacturer of a nuclear reactor alleging misrepresentation of the ability of the plant containment to withstand forces generated. The court, in part, held that under Ohio law, the four-year statute of limitations for fraud does not begin to run until the fraud is discovered and that the discovery must be actual or that the fraud could have been discovered with due diligence. In *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 23 OBR 200, 491 N.E.2d 1101, the discovery rule was applied in an adoption case. There we held, at paragraph three of the syllabus, that: "A cause of action for the tort of fraud must be brought within four years of the time the cause *accrued. The cause does not accrue until the fraud and wrongdoer are actually discovered.* * * *" (Emphasis added.) *Investors REIT One v. Jacobs* (1989), 46 Ohio St.3d 176, 546 N.E.2d 206, involved the demise of two real estate investment trusts. While a majority of the court did hold, at paragraph two (a) of the syllabus, that "[t]he discovery rule is not available to claims of professional negligence brought against accountants," we also held, at paragraph two (b), that " * * * the four-year limitations period does not commence to run on claims presented in fraud *or conversion* until the complainants have discovered, or should have discovered, the claimed matters." (Emphasis added.) Further, in a breach of contract claim, would any of us say that the statute of limitations begins to run *before* the breach has been discovered by the injured party?

If any further authority or persuasion is needed to demonstrate the inaccuracy of the majority's statement, I cite to *Urie v. Thompson* (1949), 337 U.S.

163, 69 S.Ct. 1018, 93 L.Ed. 1282. As was stated in *Stoleson v. United States* (C.A.7, 1980), 629 F.2d 1265, 1269: *"Urie* teaches that it is the nature of the problems faced by a plaintiff in discovering his injury and its cause, *and not the occupation of the defendant,* that governs the applicability of the discovery rule. That a claim may or may not arise from a physician's malpractice is purely incidental. We see no reason to ameliorate the harsh consequences of the statute of limitations in one category of cases to the exclusion of all others. Rather, any plaintiff who is blamelessly ignorant of the existence or cause of his injury shall be accorded the benefits of the discovery rule. Many malpractice plaintiffs face serious problems in discovering these critical facts. *But as Urie demonstrates, the rule was not created in a medical malpractice context and is not limited to such cases."* (Emphasis added.)

Thus, it should be obvious that the majority's statement that "[t]he discovery rule has traditionally been limited by case law to malpractice actions * * * " is just not accurate.

The other statement of the majority needing comment is that: " * * * When death occurs following an incident, the basic element of a wrongful death action, *i.e.,* the death, is a known factor and the survivors may proceed to determine the cause of death." To me, this statement goes to the heart of the case. It *was* the admitted fraud of the defendant that prevented the survivors from proceeding to determine the real cause of the death of Mrs. Hood. Absent this fraud, discovery would have occurred and the statute, R.C. 2125.02(D), would have begun to run from the date of the discovery.

### III

### The Discovery Rule

If R.C. 2125.02(D) is a statute of limitations, as the majority seems to say in parts of its opinion, then clearly the rule of discovery must apply to R.C. 2125.02(D). If R.C. 2125.02(D) is a statute of repose, then it is, in my judgment, unconstitutional as being in violation of Section 16, Article I of the Ohio Constitution just as was R.C. 2305.11(B), decided by this court in *Mominee v. Scherbarth* (1986), 28 Ohio St.3d 270, 28 OBR 346, 503 N.E.2d 717, *Hardy v. VerMeulen* (1987), 32 Ohio St.3d 45, 512 N.E.2d 626, and *Gaines v. Preterm–Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 514 N.E.2d 709. If R.C. 2125.02(D) was found to be unconstitutional, then the general statute of limitations on personal injury, found in R.C. 2305.10, would apply, the cause of action would *accrue,* and the statute would begin to run upon discovery or at such time as the plaintiff should have, with reasonable diligence, discovered that there was a possible cause of action.

The first logical question that must be answered is whether the discovery rule can and should be applied to R.C. 2125.02(D). I believe the discovery rule should be applied for the reasons which follow.

In early Ohio jurisprudence, application of the discovery rule was precluded on the basis that a limitations statute commences to run when the act complained of *occurs*. In *Kerns v. Schoonmaker* (1831), 4 Ohio 331, in the syllabus, the court held that a "[s]tatute of limitations commences to run so soon as the injurious act complained of is perpetrated, although the actual injury is subsequent, and could not immediately operate." This was so even if there had been a fraudulent concealment that delayed a plaintiff's filing. In *Fee's Admr. v. Fee* (1841), 10 Ohio 470, the court, in the syllabus, held that: "A fraudulent concealment by which the plaintiff has been delayed will not enlarge the time for bringing an action under the statute of limitations."

This law stood until 1902 when, in *Gillette v. Tucker* (1902), 67 Ohio St. 106, 65 N.E. 865, three judges of the Supreme Court could no longer accept this harsh and unfair rule and, in an equally divided court (three to three), affirmed the judgment of the lower court which had applied the "termination" rule to a medical malpractice case where a physician had left a sponge inside a woman after operating on her for appendicitis. The plurality opinion discussed *Kerns* and *Fee* but found its way around those cases and their progeny. Later, in *Bowers v. Santee* (1919), 99 Ohio St. 361, 124 N.E. 238, the court established the termination rule in paragraph two of the syllabus where the court said " * * * the statute of limitations does not begin to run until the contract relation is terminated. * * * " See, also, *DeLong v. Campbell* (1952), 157 Ohio St. 22, 47 O.O. 27, 104 N.E.2d 177.

Conceding the unfairness of *even* the termination rule, the court, in *Wyler v. Tripi* (1971), 25 Ohio St.2d 164, 54 O.O.2d 283, 267 N.E.2d 419, by a sharply divided four to three vote, refused to adopt the "discovery rule." The majority said that they had to "reluctantly conclude" (*id.* at 171, 54 O.O.2d at 287, 267 N.E.2d at 423) and found themselves "compelled to adhere" (*id.* at 172, 54 O.O.2d at 288, 267 N.E.2d at 424) to former decisions. The three dissenting justices made clear that it was time to adopt the "discovery" rule. Then, in 1972, in *Melnyk v. Cleveland Clinic, supra,* a unanimous Supreme Court established the discovery rule for foreign objects left in a patient after surgery. Each time deference was accorded to the General Assembly with hints, some subtle and some not so subtle, that something should be done to apply the discovery rule to statutes of limitations.

Previously, the General Assembly had adopted (in 1884) a discovery rule for trespass and fraud actions. (R.S. 4982, predecessor to R.C. 2305.09.) The General Assembly also adopted a discovery rule (in 1980) with respect to

bodily injury actions caused by exposure to asbestos, chromium and certain estrogens. (R.C. 2305.10.)

Still later, in 1983, this court in *O'Stricker v. Jim Walter Corp., supra,* and *Oliver v. Kaiser Community Health Found., supra,* made the discovery rule in medical malpractice actions the law, and expanded the concept even further in *Frysinger v. Leech* (1987), 32 Ohio St.3d 38, 512 N.E.2d 337. See, also, *Hershberger v. Akron City Hosp.* (1987), 34 Ohio St.3d 1, 516 N.E.2d 204, and *Allenius v. Thomas* (1989), 42 Ohio St.3d 131, 538 N.E.2d 93. In *Skidmore & Hall v. Rottman* (1983), 5 Ohio St.3d 210, 5 OBR 453, 450 N.E.2d 684, *Omni–Food & Fashion, Inc. v. Smith* (1988), 38 Ohio St.3d 385, 528 N.E.2d 941, and *Zimmie v. Calfee, Halter & Griswold* (1989), 43 Ohio St.3d 54, 538 N.E.2d 398, the discovery rule was extended to *legal* malpractice actions.

Finally, in *Mominee v. Scherbarth, supra, Hardy v. VerMeulen, supra,* and *Gaines v. Preterm–Cleveland, Inc., supra,* we found the statute of repose in R.C. 2305.11(B) to be unconstitutional. We did so even though we found, in *Gaines,* a separate cause of action for fraud.

Now, some would have us return to the dark days of *Kerns* and *Fee.* This is particularly difficult to understand when one reads the concurring opinion of Justice Holmes, concurred in by Justice Wright, in *Richards v. St. Thomas Hospital* (1986), 24 Ohio St.3d 27, 29, 24 OBR 71, 73, 492 N.E.2d 821, 824, where, at 30, 24 OBR at 73, 492 N.E.2d at 824, Justice Holmes said:

*"The only exception, or non-application, of the four-year statute of repose,* in my view, *is* that instance *where it is shown* by clear and convincing evidence *that there has been a fraudulent concealment of the cause of the alleged malpractice. In such instance I would hold that the statute is tolled during any period within which it can be shown that the fraudulent concealment prevented the filing of any such action* [for malpractice] * * *."* (Emphasis added.)

Why should not R.C. 2125.02(D) be tolled for the same reasons? Defendant, herein, fraudulently concealed the fact that Mrs. Hood was carrying around inside her chest a defective heart pacemaker manufactured by defendant. The fraudulent concealment lasted for more than the two-year period after her death. The statute should, at the very least, be tolled until discovery of the fraud and the resulting cause of action, and at that point the statute should begin to run.

Whether R.C. 2125.02(D) is a statute of repose or a statute of limitations, there is yet other precedent to apply the discovery rule to the limitations period found in the statute. Other states too have difficulty in determining what to call the time periods in wrongful death statutes such as the limitations period found in R.C. 2125.02(D). In most states, the term used is

"statute of limitations" or, simply, "time limitation." Seldom, if ever, is the term "repose" used. However, it is fair to say that a number of states have wrongful death statutes which are duplicates or substantially equivalent to our R.C. 2125.02(D). Many of these states have litigated the question of whether the "discovery" rule may, can or should be applied to the time limitation found within their wrongful death statute. The Supreme Courts of such states as Alaska (*State, Dept. of Corrections v. Welch* [1991], 805 P.2d 979), and (*Hanebuth v. Bell Helicopter Internatl.* [1984], 694 P.2d 143); Illinois (*Wyness v. Armstrong World Industries, Inc.* [1989], 131 Ill.2d 403, 137 Ill.Dec. 623, 546 N.E.2d 568); Nebraska (*Muller v. Thaut* [1988], 230 Neb. 244, 430 N.W.2d 884); Nevada (*Pope v. Gray* [1988], 104 Nev. 358, 760 P.2d 763); Colorado (*First Interstate Bank v. Piper Aircraft* [1987], 744 P.2d 1197); and Michigan (*Larson v. Johns–Manville Sales Corp.* [1986], 427 Mich. 301, 399 N.W.2d 1) have wrestled with the problem. Each has had something constructive to say.

Alaska and Nevada hold that the discovery rule is applicable to the time limitation contained in the Alaska and Nevada wrongful death statutes. Nebraska and Colorado hold that the doctrine of "fraudulent concealment" (just what we have in the case at bar) estops a defendant from asserting the time limitation as a defense to a plaintiff's wrongful death action. (Texas suggests the same result.) In the case cited, Illinois applied the discovery rule and further found the time limitation (which is almost identical to R.C. 2125.02[D]) not to be "a period of repose."

The holding of the majority that not even fraud will toll the time limitation of R.C. 2125.02(D) reaches an absurd and unjust result as is well-illustrated by the facts of the case now before us. We should not presume that the General Assembly intends, even on occasion, to engage in acts of folly. In addressing this matter, the Supreme Court of Alaska in *Hanebuth v. Bell Helicopter Internatl., supra,* at 146–147, said: "We hold that the discovery rule does apply to the death act because of the fundamental fairness of the rule and * * * because it is consistent with the purposes of the act. The legislature did not intend that the limitation period in the death act be interpreted to reach unjust and absurd results. The same reasoning, founded on basic justice, that has led us to adopt the discovery rule generally is present in wrongful death actions. It is profoundly unfair to deprive a litigant of his right to bring a lawsuit before he has had any reasonable opportunity to do so. * * * We will not attribute an intent to adopt such an irrational result to the legislature. * * * "

Accordingly, at the very *least,* the syllabus in the case at bar should read:

"Where there is fraudulent concealment, the discovery rule will be applied and the time limitation of R.C. 2125.02(D) will be tolled."

The law should not be exempt from logical and practical interpretations.

## IV

### Wrongful Death at Common Law

In addition to the foregoing, I disagree with the majority's conclusions that an action for wrongful death is conditioned solely upon compliance with the wrongful death statute, and that R.C. 2125.02(D) does not violate Section 16, Article I of the Ohio Constitution. The majority's conclusions are premised upon the proposition that "[a]t common law, there is no action for wrongful death." If this proposition is faulty, the majority's conclusions based upon the proposition are incorrect.

In *Baker v. Bolton* (1808), 1 Camp. 493, 170 Eng. Rep. 1033, Lord Ellenborough reportedly held that "[i]n a civil Court, the death of a human being could not be complained of as an injury * * *." *Id.* The holding in *Baker* was apparently the first explicit statement of the English common-law rule prohibiting recovery for wrongful death. See *Moragne v. States Marine Lines, Inc.* (1970), 398 U.S. 375, 382–383, 90 S.Ct. 1772, 1778, 26 L.Ed.2d 339, 347. However, the holding in *Baker* was unsupported by citation to authority and Lord Ellenborough offered no supporting reasons for his conclusion. Additionally, the accuracy of the report of Ellenborough's holding in *Baker* has been questioned. See *Osborn v. Gillett* (1873), 8 L.R.Exch. 88, 96 (Bramwell, B., dissenting).

Although Lord Ellenborough provided no justification to support his holding in *Baker,* it is probable that the sole substantial basis for the holding was the felony-merger doctrine—a feature of the early English law which did not survive into this century. See Holdsworth, The Origin of the Rule in *Baker v. Bolton* (1916), 32 L.Q.Rev. 431; *Moragne, supra,* at 382, 90 S.Ct. at 1778, 26 L.Ed.2d at 346; and Pollock, Law of Torts (12 Ed.1923) 63. Under the felony-merger doctrine, no civil recovery was allowed for an act which constituted both a tort and a felony since the felony (an offense against the Crown) was considered the greater offense and preempted or overshadowed the tort. See, *e.g., Higgins v. Butcher* (K.B. 1606), Yel. 89, 90, 80 Eng. Rep. 61. See, also, *Osborn, supra,* at 98–99. The felony-merger doctrine was well-grounded in logic since, at common law, punishment for most felonies was death, the forfeiture of the felon's chattels to the Crown, and the escheat of the felon's real property. See Holdsworth, *supra,* at 432–433, and *Moragne, supra,* at 382, 90 S.Ct. at 1778, 26 L.Ed.2d at 346. Thus, after the felon had been punished for the crime, nothing remained of the felon or his or her property

and, therefore, a civil cause of action against the felon would be an empty right incapable of satisfaction. Since most intentional and negligent homicides were felonious in the English common law, wrongful death actions were unknown.

The historical justification (if any) for the rule in *Baker* (the felony-merger doctrine) never existed in this country. However, the courts in this country generally adopted the *Baker* rule and the courts in Ohio were no exception.

In *Pittsburg[h], Cincinnati & St. Louis RR. Co. v. Hine* (1874), 25 Ohio St. 629, this court held that a cause of action for wrongful death " * * * could only be conferred by statute." *Id.* at 634. The court reached this conclusion (without citation to authority) relying solely on the fact that a nonstatutory action for wrongful death " * * * was not known to the common law * * *." *Id.*

In *Davis v. Justice* (1877), 31 Ohio St. 359, this court cited *Baker* with approval and concluded that a nonstatutory cause of action for pecuniary loss resulting from the death of a human being " * * * was unknown in our practice * * *." *Id.* at 363. The court in *Davis* made no attempt to find justification for the rule in *Baker* and never questioned whether the rule reflected the true state of the common law as it exists in this country.

In *Baltimore & Ohio RR. Co. v. Chambers* (1905), 73 Ohio St. 16, 24, 76 N.E. 91, 93, this court, once again, accepted as true that a cause of action for wrongful death rests solely upon the grant of a statutory right to pursue the claim. However, the court cited no authority to support the proposition.

In *Karr v. Sixt* (1946), 146 Ohio St. 527, 532, 33 O.O. 14, 16, 67 N.E.2d 331, 334, this court held that Ohio's wrongful death statute " * * * is an innovation to the principles of the common law and affords the only civil remedy to compensate others for death resulting from injuries." In support of this proposition, the court cited *Davis, supra,* and *Chambers, supra,* although these cases never explored the historical justification (if any) for the rule in *Baker* to determine whether the common law permits recovery for wrongful death.

In *Sabol v. Pekoc* (1947), 148 Ohio St. 545, 36 O.O. 182, 76 N.E.2d 84, paragraph one of the syllabus, this court approved and followed *Hine, supra,* even though the holding in *Hine* was unsupported by citation to authority.

In *Klema v. St. Elizabeth's Hospital* (1960), 170 Ohio St. 519, 524, 11 O.O.2d 326, 329, 166 N.E.2d 765, 769, this court concluded that "[t]he wrongful death action is a special statutory action which does not exist at common law." The court, in *Klema,* cited no authority in support of this proposition.

In *Rubeck v. Huffman* (1978), 54 Ohio St.2d 20, 22, 8 O.O.3d 11, 13, 374 N.E.2d 411, 413, this court concluded that the right to recover for wrongful death " * * * is not recognized at common law." To support this conclusion, the court cited Annotation (1975), 61 A.L.R.3d 906, 908, and Malone, The Genesis of Wrongful Death (1965), 17 Stanford L.Rev. 1043, 1044. At this point, it is interesting to quote the relevant portions of the annotation relied upon by the court in *Rubeck:*

"The rule that the common law does not recognize a civil action for wrongful death has been buttressed primarily by three arguments. First, it has been said that any civil wrong merges with the supposed felony involved in the forfeiture, and since in early days the felon's goods were forfeit to the Crown, it would have been an empty action to permit a civil suit for a judgment which could never be satisfied. Secondly, the result has been justified under the maxim 'Actio personalis moritur cum persona,' that is, that personal actions die with the person. And, finally, it has been said that human life is held in such reverence that the law will not deign to fix a pecuniary value on it.

"These arguments have been rejected by almost every commentator or court which has seriously considered the matter.

"Professor Smedley, at 13 Vanderbilt L Rev 609, states that the common-law rule depends more on historical consideration than on logical reasons, and that it was finally confirmed in the common law at a relatively late date and largely by judicial accident.

"Noting that under the common-law rule it was less expensive to kill than to scratch, Professor Prosser in the Law of Torts § 127, notes, but regards as quite unfounded, the legend that this was the original reason that passengers in Pullman car berths rode with their heads to the front or that the fire axes in railroad coaches were provided to enable the conductor to deal efficiently with those who were merely injured.

"While the cause of action for wrongful death apparently was not recognized under Roman law, modern civil law jurisdictions do allow such an action. See Malone, The Genesis of Wrongful Death. 17 Stanford L Rev. 1043." (Footnote omitted.) Annotation, *supra,* at 908.

Obviously, the citation in *Rubeck* to the annotation provides little insight into the court's reliance on an antiquated and archaic doctrine of the English common law. Furthermore Malone's article, cited by the majority in *Rubeck,* suggests that recovery for wrongful death in this country was permitted long before the enactment of Ohio's wrongful death statute.

In *Keaton v. Ribbeck* (1979), 58 Ohio St.2d 443, 12 O.O.3d 375, 391 N.E.2d 307, this court relied upon *Karr, supra,* in declining to recognize a common-law action for wrongful death. As we have seen, the court in *Karr* simply followed previous rulings of this court without any supporting rationale.

As the aforementioned decisions of this court illustrate, the rule in Ohio that there is no common-law action for wrongful death derives from the fact that such an action has heretofore been unknown in our practice. Without ever questioning the reason for this phenomenon, a majority of this court has, historically, applied the rule without analysis and oftentimes without citation to authority. Today's majority is no different as it somnambulates through the law, reciting the rule that there was no action for wrongful death at common law, but engaging in no conscious thought.

In my judgment, a review of the common law reveals no rational justification for prohibiting a nonstatutory cause of action for wrongful death. The English common-law impediment to recovery for wrongful death (the felony-merger doctrine) has never been applicable in American jurisprudence. Thus, the common law as it exists in this country recognizes no impediment to recovery in common-law trespass actions involving death. Simply because a common-law cause of action for wrongful death was unknown in Ohio does not mean that such an action does not exist. It would certainly seem that "wrongful death" is the ultimate personal injury. Therefore, I would hold that a common-law cause of action for wrongful death exists in Ohio and that R.C. 2125.02(D), which purports to prohibit recovery for wrongful death before a cause of action is discovered, violates the open courts provision of the Ohio Constitution. (Clause 1, Section 16, Article I.)

In reaching my conclusion, I am persuaded by the United States Supreme Court's opinion in *Moragne, supra,* recognizing a nonstatutory (common-law) right of action for death caused by a violation of maritime duties. In *Moragne,* the court inquired into the historical justifications for the rule prohibiting recovery for wrongful death, and concluded that the rule had little justification except in primitive English legal history. *Id.,* 398 U.S. at 381–386, 90 S.Ct. at 1777–1780, 26 L.Ed.2d at 346–348. The court in *Moragne* also concluded that the English rule was adopted in this country without much question and, most likely, because the rule "had the blessing of age." *Id.* at 386, 90 S.Ct. at 1780, 26 L.Ed.2d at 348. I am also persuaded by the holding of the Massachusetts Supreme Court in *Gaudette v. Webb* (1972), 362 Mass. 60, 71, 284 N.E.2d 222, 229 ("Upon consideration of the *Moragne* decision and the sound reasoning upon which it is based, we are convinced that the law in this Commonwealth has also evolved to the point where it may now be held

that the right to recovery for wrongful death is of common law origin, and we so hold.")

Finally, I am persuaded by the fact that the majority's holding, carried to its logical conclusion, is absolutely absurd. If the majority is correct that a wrongful death action stems solely from the wrongful death statute, then if the General Assembly decided to repeal Ohio's wrongful death statute, any tortfeasor who negligently injured another would need only be sure that his or her victim was dead in order for the tortfeasor to be absolved from civil liability. If Ohio's wrongful death statute remains in effect and is interpreted in the fashion that the majority today interprets R.C. 2125.02(D), a tortfeasor need only kill his or her victim and fraudulently conceal the cause of death for two years to be absolved from civil liability. In effect, the majority grants tortfeasors a status reminiscent of Ian Fleming's "James Bond." I suggest that even Ian Fleming would be impressed with the status conferred upon tortfeasors by today's majority opinion. I, for one, cannot concur in the majority's issuance of a license to kill.

V

Conclusion

Mrs. Hood died on June 28, 1984. On that date, and during the two years thereafter, there was no reason to suspect nor any way to know or believe that her death was caused by the wrongful act, neglect, or default of another as required by R.C. 2125.01. The ability to obtain such knowledge was concealed by defendant from Mrs. Hood's personal representative through the perpetration of fraud. Today, this court, to a major degree, sanctions that conduct. This does not just close the courthouse door to the estate of Mrs. Hood. It is as though the courthouse was never built for the protection of her rights and those of her estate.

Maybe Judge Frank in his dissent in *Dincher v. Marlin Firearms Co.* (C.A.2 1952), 198 F.2d 821, 823, said it best. In part, Judge Frank said:

"Except in topsy-turvy land, you can't die before you are conceived, or be divorced before ever you marry, or harvest a crop never planted, or burn down a house never built, or miss a train running on a non-existent railroad. For substantially similar reasons, it has always heretofore been accepted, as sort of legal 'axiom', that a statute of limitations does not begin to run against a cause of action before that cause of action exists, *i.e.*, before a judicial remedy is available to the plaintiff. * * *" (Footnotes omitted.)

Here, according to the holding of the majority, no judicial remedy for the wrongful death of Mrs. Hood was ever available. Maybe this is topsy-turvy land after all.

SWEENEY, J., concurs in the foregoing dissenting opinion.