GULF OIL CORPORATION, APPELLANT, *v.* KOSYDAR, TAX COMMR., APPELLEE.

(No. 75-497—Decided December 31, 1975.)

*Messrs. Glander, Brant, Ledman & Newman, Mr. James H. Ledman,* and *Mr. C. Emory Glander,* for appellant.

*Mr. William J. Brown,* attorney general, and *Mr. John C. Duffy, Jr.,* for appellee.

CELEBREZZE, J. The issue before the court, as it was before the Tax Commissioner and the Board of Tax Appeals, concerns construction of the "business done" apportionment formula contained in R. C. 5733.05 as it applied to tax years 1970 and 1971.

At that time, R. C. 5733.05 provided, in pertinent part:

"* * * take the other part and multiply by a fraction whose numerator is the value of the business done, *measured by sales of tangible personal property,* by the corporation in this state during the year preceding the date of the commencement of its current annual accounting period, and whose denominator is the total value of its business, *measured by sales of tangible personal property,* during said year wherever transacted.

"* * *

"Corporations, whose business *does not consist* in the making of sales of tangible personal property *and to which*

*the sales numerator and denominator cannot apply* but which business consists in such activities as receiving commissions, rents, interest, dividends, and fees shall be determined by allocating such business activities in and out of Ohio according to their situs.'' (Emphasis added.)

Appellant argues that since its "business done" is derived both from making "sales of tangible personal property" and from "such activities as receiving * * * rents * * * dividends and fees," the totality of its corporate business should be considered in computing the "business done" fraction of Ohio's franchise tax apportionment formula. Stated another way, appellant contends that the two sections of R. C. 5733.05 set forth above are not mutually exclusive.

However, the Board of Tax Appeals maintains that "the legislature of this state has specifically provided that 'business done' is to be 'measured by sales of tangible personal property' where a corporation, in fact, makes sales of tangible property."

Appellant relies upon *Westinghouse* v. *Porterfield* (1970), 23 Ohio St. 2d 50, and maintains that the decision in that case controls the disposition of the present cause. We disagree.

At that time, during the tax years in question (1960-1964), R. C. 5733.05 provided, in pertinent part:

"'* * * take the other part and multiply by a fraction whose numerator is the value of the business done by the corporation in this state during the year preceding the date of the commencement of its annual accounting period, and whose denominator is the total value of its business during said year wherever transacted."

The phrase "value of the business done," then appearing in R. C. 5733.05, was not defined anywhere in R. C. 5733.01 *et seq.* Accordingly, the Tax Commissioner had adopted Rules 275 and 276 to provide the missing definition. Those rules provided:

"Rule 275. 'Business done' in and out of Ohio by cor-

porations subject to the payment of franchise taxes shall be determined under Section 5733.05, Revised Code, by allocating to the business fraction, therein provided, *sales* in and out of Ohio. [Emphasis added.]

"All sales of goods from warehouses in Ohio, whereever manufactured, shall be considered as Ohio sales.

"In the case of manufacturing companies, all sales of goods manufactured in Ohio, wherever sold, shall be considered as Ohio sales, except sales of such products as are sold from warehouses outside of this state.

"The denominator of such business fraction shall in all cases be the *total sales* wherever made. [Emphasis added.]

"Rule 276. 'Corporations,' whose business does not consist in the making of sales and to which Rule 275 cannot apply but which business consists in such activities as receiving commissions, rents, interest, dividends, fees, etc., shall be determined by allocating such business activities in and out of Ohio according to their situs.''

Appellant argues that *Westinghouse* stands for the proposition that former Rules 275 and 276 were not mutually exclusive, and since the substance of said rules has been incorporated into R.C. 5733.05 as it applied to the tax years at issue herein,[5] *Westinghouse* must be held dispositive of the present appeal.

Although comparison of the franchise tax reports filed in *Westinghouse* with those filed in the instant cause does indeed indicate similarity between the two, a closer reading of the decision in *Westinghouse* reveals that it was based upon a much narrower ground than appellant suggests.

In *Westinghouse*, Justice Schneider set forth the following table as exhibited in the record therein, and expressed the court's holding in the subsequent four paragraphs:

---

[5] In *Westinghouse*, the court expressly reserved the question whether R. C. 5733.05, as it applies in the instant case, specifically incorporated the substance of former Rules 275 and 276. See 23 Ohio St. 2d, at page 51, fn. 1. We now reach that question and hold that it does.

Westinghouse Electric Corporation
Ohio Franchise Tax
Business Done In and Out of Ohio
1960 through 1964

| | | |
|---|---|---|
| Ohio Franchise Tax Year | | 1962 |
| Calendar Year | | 1961 |
| Receipts From: | Ohio | Total |
| 1. Sales of Goods and Services | $187,014,125 | $1,830,990,049 |
| 2. Dividends | . . . . . . . . . . . | 5,093,944 |
| 3. Interest | . . . . . . . . . . . | 10,774,818 |
| 4. Rents | 10,760 | 66,631 |
| 5. Royalties | . . . . . . . . . . . | 10,245,612 |
| 6. Sales & Dispositions of Tangible Property | 53,955 | 1,915,245 |
| 7. Sales & Dispositions of Securities | . . . . . . . . . . . | 604,111,277 |
| Totals | $187,078,840 | $2,463,197,576 |

"With reference to Item 1 on the above table, we immediately note that it is entitled 'Sales of Goods and *Services*.' (Emphasis supplied.) The totals shown opposite that item represent unchallenged figures which Westinghouse used to compute its original franchise tax and represent the starting point for its claimed refunds. We note also that the record contains several other unchallenged references to those totals as containing receipts from sales of goods as well as receipts from services rendered by Westinghouse.

"*It appears to us, then, that Westinghouse's emphatically repeated contention that the proper question in this case is whether the Tax Commissioner was correct in treating his Rules 275 and 276 as mutually exclusive is completely answered by the fact that he did apply a combination of formulas contained in both rules to Westinghouse as to Item 1 activities.*

"Rule 275 comprehends solely tangible goods sold from

inventory, whether or not manufactured by the taxpayer. On the other hand, Rule 276 contemplates receipts from 'commissions' and 'fees,' of which 'services' is an equivalent.

"Having applied both rules to Item 1 activities, the Tax Commissioner should not be permitted to exclude the activities represented by Item 2 (gross receipts from dividends from permanent investments in subsidiaries and licensees), Item 3 (gross receipts from interest from the securities involved in Item 7 as well as from advances and loans to subsidiaries, licensees and customers), Item 4 (gross receipts from rents from real estate held throughout its territory of operations) and Item 5 (gross receipts from royalties on patents and licensing agreements to various royalties on patents and licensing agreements to various other entities). Surely, all of these items are expressly or impliedly contemplated by Rule 276. The Board of Tax Appeals was therefore correct in deciding for Westinghouse as to such items, although not for the reasons set forth in its written decision." 23 Ohio St. 2d at 52-53. (Second emphasis added.)

In *Westinghouse,* then, this court did not reach the question presented in the instant case, namely, whether the substance of former Rules 275 and 276 are mutually exclusive, but held only that since the Tax Commissioner had applied a combination of both rules to the Item 1 activities therein, he must include in his computation of the "business done" fraction the other activities contained in said former Rule 276.

Having determined, then, that *Westinghouse* is distinguishable from the case at bar, we turn now to resolution of the instant appeal.

As a starting point, this court is mindful that its duty is limited when called upon to construe legislative enactments.

In *Provident Bank* v. *Wood* (1973), 36 Ohio St. 2d 101, 105, we stated that "[i]t is a cardinal rule that a court must first look to the language of the statute itself to determine the legislative intent. See, *e. g., Katz* v. *Department of Li-*

*quor Control* (1957), 166 Ohio St. 229. If that inquiry reveals that the statute conveys a meaning which is clear, unequivocal and definite, at that point the interpretative effort is at an end, and the statute must be applied accordingly. *Sears v. Weimer* (1944), 143 Ohio St. 312.''

In *State, ex rel. Francis,* v. *Sours* (1944), 143 Ohio St. 120, 124, it was stated that ''[t]he polestar of construction and interpretation of statutory language is legislative intention. In determining that intention courts look to language employed and to the purpose to be accomplished.'' Accord, *Henry v. Central Natl. Bank* (1968), 16 Ohio St. 2d 16, 20.

The above principle of construction was stated negatively in *Carmelite Sisters, St. Rita's Home, v. Bd. of Review* (1969), 18 Ohio St. 2d 41, 46, as follows: ''\* \* \* the legislative intent may be inquired into only if the enactment is ambiguous upon its face.''

In the instant case, the relevant portion of R. C. 5733.-05 reads:

''\* \* \* take the other part and multiply by a fraction whose numerator is the value of the business done, *measured by sales of tangible* personal property, \* \* \* and whose denominator is the total value of its business, *measured by sales of tangible personal property,* during said year whereever transacted.

''\* \* \*

''Corporations whose business *does not consist* in the making of sales of tangible personal property *and to which the sales numerator and denominator cannot apply* but which business consists in such activities as receiving commissions, rents, interest, dividends, and fees shall be determined by allocating such business activities in and out of Ohio according to their situs.'' (Emphasis added.)

In interpreting the above language the Board of Tax Appeals held that since Gulf did, in fact, make sales of tangible personal property, its ''business done'' must be measured by said sales alone as provided by the first part of R. C. 5733.05.

The construction placed upon R. C. 5733.05 by the Board of Tax Appeals, however, fails to consider the statute taken as a whole. As this court stated in *Humphrys* v. *Winous Co.* (1956), 165 Ohio St. 45, 49, in construing a statute ''such a construction should be adopted which permits the statute and its various parts to be construed as a whole and gives effect to the paramount object to be attained.''

Careful analysis of the second part of R. C. 5733.05 reveals why the Board of Tax Appeals did not construe the entire statute. That language clearly applies *only* to a taxpayer (1) whose business does *not* consist of ''making sales of tangible personal property'' *and* (2) ''to which the sales numerator and denominator cannot apply.'' (Emphasis added.)

Since appellant Gulf is a taxpayer whose business *does* consist of ''making sales of tangible personal property,'' and, therefore, the sales numerator and denominator *can* apply to Gulf, we conclude that R. C. 5733.05 is ambiguous as applied to a taxpayer such as Gulf whose business consists *both of* ''making sales of tangible personal property'' *and* of ''such activities as receiving commissions, rents, interest, dividends and fees.'' We conclude, further, that the ''sales of tangible personal property'' and the ''such activities as receiving commissions, rents, interest, dividends, and fees'' portions of R. C. 5733.05 are mutually exclusive. Such conclusion does not help the Tax Commissioner, however, since it only exacerbates the problem presented herein, for neither portion of R. C. 5733.05, standing alone, purports to apply to a taxpayer such as Gulf.

It is the duty of the courts, if the language of a statute fairly permits or unless restrained by the clear language thereof, to so construe a statute as to avoid unreasonable or absurd consequences. *Canton* v. *Imperial Bowling Lanes* (1968), 16 Ohio St. 2d 47, 53.

Accordingly, we hold that as applied to a taxpayer whose business consists *both* of ''making sales of tangible personal property,'' and of such other activities ''as

receiving commissions, rents, interest, dividends, and fees,'' R. C. 5733.05 requires the Tax Commissioner to compute the ''business done'' apportionment fraction by reference to the total value of such taxpayer's business in and out of Ohio according to situs.

Our conclusion comports with the legislative purpose in enacting the franchise tax, which was to tax foreign corporations for the privilege of doing business in Ohio to the extent of the reasonable value of the privilege.[6]

Moreover, in reaching the conclusion we do, we adhere to the long-standing practice of this court, when faced with the task of construing a taxing statute, as stated in paragraph one of the syllabus in *Davis* v. *Willoughby* (1962), 173 Ohio St. 338: ''Strict construction of taxing statutes is required, and any doubt must be resolved in favor of the citizen upon whom or the property upon which the burden is sought to be imposed.'' See, also, *Accountant's Computer Services* v. *Kosydar* (1973), 35 Ohio St. 2d 120, 126; *B. F. Goodrich Co.* v. *Peck* (1954), 161 Ohio St. 202, 206; *Shafer* v. *Glander* (1950), 153 Ohio St. 483, 485-486; *Clark Restaurant Co.* v. *Evatt* (1945), 146 Ohio St. 86, 91; *Watson* v. *Tax Comm.* (1939), 135 Ohio St. 377, 381.

Such principle of law is particularly applicable herein in light of the mutually exclusive nature of the two separate portions of R. C. 5733.05, and their collective failure to elucidate clearly and unambiguously the proper apportionment fraction applicable to taxpayers such as Gulf.

For the foregoing reasons, the decision of the Board of Tax Appeals is unreasonable and unlawful, and is reversed.

*Decision reversed.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN, W. BROWN and P. BROWN, JJ., concur.

---

[6]Because of the manner in which we dispose of this case, we do not reach the constitutional question posited by appellant in its third proposition of law.