Miami Valley Broadcasting Corporation, Appellee, *v.* Kosydar, Tax Commr., Appellant.

(No. 76-159—Decided October 20, 1976.)

*Messrs. Porter, Stanley, Platt & Arthur* and *Mr. Roger F. Day,* for appellee.

*Mr. William J. Brown,* attorney general, and *Mr. John C. Duffy, Jr.,* for appellant.

WILLIAM B. BROWN, J. The issue is this cause is the reasonableness and lawfulness of the board's determinations that both appellee's income and accounts receivable from sales of national advertising and network broadcasting time for the tax years 1969 and 1970 should be afforded an out-of-state situs for Ohio franchise and property tax purposes.

R. C. Chapter 5733 taxes all corporations exercising franchises in Ohio. It guards against taxing such franchises beyond their reasonable value by attributing total corporate assets (minus enumerated exceptions) to "business done" or "property owned" and then basing the tax rate of each on a fraction consisting of an Ohio "business done" or "property owned" numerator and a total "business done" or "property owned" denominator.

Under R. C. 5733.05, if a corporation sells tangible personal property, the value of its "business done" in Ohio is based on the sale of such property in this state. For taxpayers not selling tangible personal property, R. C. 5733.-05, as it applied in the tax years 1969-1970, contained the following provision:

"In the case of corporations whose business does not consist of the making of sales of tangible personal property and to which the sales numerator and denominator cannot apply, but which business consists of such activities as receiving commissions, rents, interest, dividends, and fees, the fraction shall be determined by allocating such business activities in and out of this state according to their situs."[1]

In *Gulf Oil Corp.* v. *Kosydar* (1975), 44 Ohio St. 2d 208, 217, this court construed that provision and concluded that "the 'sales of tangible personal property' and the 'such activities as receiving commissions, rents, interest, dividends, and fees' portions of R. C. 5733.05 are mutually exclusive."

Since the two parts of the provision are mutually ex-

---

[1] R. C. 5733.05 has been amended, effective July 20, 1973.

clusive, appellee's income from the sale of advertising and broadcasting time must fall within the "receiving commissions" portion of the statute. Therefore, the dispute over the "business done" portion of appellee's franchise tax centers on the latter half of the above-quoted portion of R. C. 5733.05.

The Tax Commissioner, in effect, determined that the situs of appellee's income from national sales of broadcast time was Ohio, the situs of the broadcasts *giving rise* to the sales.

When it reversed the commissioner, the board determined that the situs for such income was New York, stating:

"It is perfectly clear that the portion of Revised Code Section 5733.05 quoted above applies in this cause for the simple reason that the appellant [appellee] is not engaged in selling tangible personal property. * * * It is also perfectly clear that this statute says that when a corporation's business consists of receiving various types of revenues such as fees, et cetera, then the business fraction is to be determined by allocating the business activities of *receiving* such revenues in and out of Ohio according to their situs."

The meaning of R. C. 5733.05 is clear. It does not discuss activities giving rise to sales. Instead, it provides that the franchise tax derived from businesses not selling tangible personal property, but treated instead as engaging in *"such activities as receiving* commissions, rents, interest, dividends, and fees, * * * shall be determined by allocating *such business activities* in and out of this state according to their situs." (Emphasis added.) The situs in question refers to "such business activities," and that phrase, in turn, refers to the act of "receiving" commissions, rents, etc. The "keynote of the statutory language," as the board determined, is the word *receiving*.

The Board of Tax Appeals found that all payments to appellee for national advertising and network broadcasting time were deposited in a New York City bank account

that was available only to certain officers of appellee's parent corporation. Given that finding and the clear meaning of the statute, the board's determination that appellee's income from sales of national advertising and network broadcasting time was "received" in New York, and was therefore not subject to Ohio franchise tax for the tax years 1969-1970, is reasonable and lawful.

The second question raised by this cause is whether the board's interpretation of R. C. 5733.05 and 5709.03, which led it to exclude from appellee's franchise and Ohio property taxes the accounts receivable from its sales of national advertising and network broadcasting time, is reasonable and lawful.

R. C. 5733.05 governs the assessment of the "property owned" fraction of the franchise tax. When intangible property is in issue, the statute directs the commissioner to R. C. 5709.03, which fixes the situs of intangible property for Ohio property tax as well as for the "property owned" portion of the Ohio franchise tax. If the intangible property of a corporation falls within the terms of R. C. 5709.03, it is not subject to either tax.

The applicable portion of R. C. 5709.03 provides:

"Property of the kinds mentioned in this section, when used in business, shall be considered to arise out of business transacted in a state other than that in which the owner resides, under the circumstances following:

"(A) Accounts receivable resulting from the sale of property by an agent having an office in such other state * * * or from services performed by an officer, agent, or employee connected with, sent from, or reporting to any officer or at any office located in such other state."

The Tax Commissioner assigned an Ohio situs to appellee's accounts receivable on the grounds that the accounts receivable were not the *result* of New York sales but of appellee's Dayton broadcasting activities. The Board of Tax Appeals correctly rejected the commissioner's reasoning.

The implication of the commissioner's argument is

that, under R. C. 5709.03, all accounts receivable derived from sales by agents with offices in other states will be given an Ohio situs if the Ohio corporation carries on *any* activity in this state from which the sales might be said to result.

This interpretation is refuted by the clear meaning of the statute.[2] By declaring that the intangible property of an Ohio corporation *"shall be* considered to arise out of business transacted in a state other than that in which the owner resides, *under the circumstances following"* (emphasis added), R. C. 5709.03 calls for an out-of-state situs for accounts receivable which qualify under division A. Division A, in turn, calls for an out-of-state situs for accounts receivable (1) resulting from services performed (2) by an officer, agent or employee (3) connected with or sent from any office located in such other state.

The board found that appellee commissions an exclusive New York agent to handle its national advertising sales and that it maintains a New York office from which a corporate officer deals with network contracts. Given this finding, the Board of Tax Appeals was correct in concluding that appellee's sales of national advertising and network broadcasting time fall within the terms of R. C. 5709.03(A), and was correct in assigning an out-of-state situs to appellee's New York accounts receivable. The board's interpretation and application of R. C. 5709.03 is reasonable and lawful.

In addition to taking issue with the board's application and interpretation of R. C. 5709.03 and 5733.05, the commissioner questions the jurisdiction of the board to rule on the situs of certain intercompany accounts receivable because appellee "failed to specify such errors in the notice of appeal." However, on appeal to the board, ap-

[2]This court implicitly refuted such reasoning in *Ransom & Randolph Co.* v. *Evatt* (1944), 142 Ohio St. 398. In that case, this court assigned non-Ohio situs to the accounts receivable of an Ohio corporation even though some of the products sold out of state had been manufactured by that corporation in Ohio.

16

pellee contended generally that "[t]he accounts receivable should have been allocated outside of Ohio by the Tax Commissioner * * *." Under the circumstances, as we stated in *Abex Corp.* v. *Kosydar* (1973), 35 Ohio St. 2d 13, 17, there is no reason " 'to be hypertechnical and to deny the right of appeal on captious grounds * * *.' " The board had jurisdiction to decide that issue.

The decision of the Board of Tax Appeals, being neither unreasonable nor unlawful, is affirmed.

*Decision affirmed.*

O'Neill, C. J., Herbert, Corrigan, Stern, and Celebrezze, JJ., concur.

P. Brown, J., dissents.