[This opinion has been published in *Ohio Official Reports* at 79 Ohio St.3d 358.]

CLERMONT COUNTY ADAMH BOARD ET AL., APPELLEES and CROSS-APPELLEES, *v.* HOGAN, DIR., ET AL., APPELLANTS; OHIO COALITION OF ADAMH/CMH BOARDS ET AL., APPELLEES and CROSS-APPELLANTS.

[Cite as *Clermont Cty. ADAMH Bd. v. Hogan*, 1997-Ohio-31.]

*Public welfare—R.C. 5119.62(B)(2) establishes the total amount of state general revenue funds to the Department of Mental Health for allocation and distribution to the alcohol, drug, and mental health services boards according to the provisions of R.C. 5119.62(B)(1) and other relevant statutory provisions.*

R.C. 5119.62(B)(2) establishes the amount of state general revenue funds appropriated to the Department of Mental Health for funding state mental hospitals that the department must allocate and distribute to the alcohol, drug and mental health services boards pursuant to a formula devised by the department in its discretion according to R.C. 5119.62(B)(1) and other relevant statutory provisions.

(No. 95-2561—Submitted March 19, 1997—Decided August 13, 1997.)

APPEAL and CROSS-APPEAL from the Court of Appeals for Clermont County, Nos. CA94-09-074, CA94-10-079, CA94-10-080 and CA94-10-082.

_____

{¶ 1} Over fifty alcohol, drug abuse, and mental health services boards ("ADAMHS boards") and community mental health boards ("CMH boards") exist throughout Ohio. They are statutorily charged with the responsibility of planning and providing mental health services and alcohol and drug addiction services to residents of the districts they serve. R.C. 340.02, 340.021, 340.03, and 340.033.

{¶ 2} This action against the Ohio Department of Mental Health ("department") and its Director was initiated by six county ADAMHS boards and two

individuals who suffer from mental illness. Plaintiffs alleged that the department had violated R.C. 5119.06, 5119.62(B)(1), and 5119.62(B)(2), and had violated the equal protection rights of the individual plaintiffs. As is specifically relevant to this appeal, plaintiffs claimed that in fiscal year 1993 the department failed to allocate funds to the state's ADAMHS boards in the amounts required by R.C. 5119.62(B)(2), in that "the percentage amounts of state mental health hospital appropriations to be allocated by defendants to the ADAMHS boards for the development of community based services was to increase as follows: 20% in fiscal year 1991; 40% in fiscal year 1992; 60% in fiscal year 1993; 80% in fiscal year 1994; and 100% in fiscal year 1995 and thereafter." They further alleged that the department did not plan to allocate eighty percent of state hospital appropriations for fiscal year 1994 to the state's ADAMHS boards as required by R.C. 5119.62(B)(2). The plaintiffs sought declaratory and injunctive relief, but did not seek recovery of funds representing monies allegedly due them in the past but not paid by the department.

{¶ 3} Subsequently two additional ADAMHS boards, one CMH board, and three additional severely mentally disabled or seriously emotionally disturbed individuals joined the action as plaintiffs, and ten other county boards of alcohol, drug abuse and mental health services or boards of community mental health,[1] acting together as the Ohio Coalition of ADAMH/CMH Boards ("Ohio Coalition"), were granted leave to intervene as additional plaintiffs to present their interests, which they deemed to be different from those of the original plaintiff boards. Ultimately, every ADAMHS board and CMH board in the state was joined as a party in the action, and given an opportunity to align itself with either the original plaintiff boards, the Ohio

---

1. ADAMHS boards were statutorily created in 1989 by the enactment of Am.Sub.H.B. No. 317. 143 Ohio Laws, Part III, 4193-4194. Prior to that time, mental health services were provided at the local level by community mental health boards. Am.Sub.H.B. No. 317 gave counties with a population over 250,000 the option of retaining the existing community mental health board and creating a separate new board for the purpose of planning and providing for alcohol and drug abuse services. See R.C. 340.021.

Coalition boards, the department, or yet another intervening group of ADAMHS/CMH boards, the Alliance for Stable Client Care. In addition, the action was certified as a class action in which the class was defined as all residents of Brown and Clermont counties who are, or will in the future become, severely mentally disabled or seriously emotionally disturbed, and entitled to services from agencies funded by an ADAMHS board.

{¶ 4} On May 2, 1994 the trial court severed the issues raised in the pleadings and proceeded to determine the issue presented in the plaintiffs' first cause of action only, that being whether the department's actions and proposed actions in allocating state funds to the local ADAMHS and CMH boards of the state for fiscal years 1993 and 1994 "violate[d] defendants' mandatory statutory obligations pursuant to Ohio Revised Code §5119.62(B)(2)." The trial court thus deferred consideration of plaintiffs' allegation that the defendants had violated R.C. 5119.62(B)(1) in their allocation and distribution of funds to the state's ADAMHS boards. It further deferred consideration of the individual plaintiffs' constitutional claims.

{¶ 5} The plaintiffs supplemented their second amended complaint by adding an allegation that the department's allocation plan for fiscal year 1995 violated R.C. 5119.62(B)(2) as had its plans for previous years.

{¶ 6} The trial court rendered a decision and entered a declaratory judgment that the department had not properly allocated the full amount of state general revenue funds required by R.C. 5119.62(B)(2) during the fiscal years in question. The trial court issued a permanent injunction enjoining the department from implementing its fiscal year 1995 allocation plan. It further certified that no just cause existed to delay appeal pursuant to Civ.R. 54(B) and stayed its order pending appeal.

{¶ 7} The court of appeals affirmed. It noted that the plaintiffs' contentions of impropriety as to distribution of total state ADAMHS/CMH board funds *among* all fifty-three (now fifty-one) state ADAMHS/CMH boards pursuant to R.C. 5119.62(B)(1) had not been adjudicated by the trial court, stating that "nothing in the

trial court's order determines the issue of the legality of the allocation formula established by [the department] for FY 1994 or 1995." The court of appeals remanded the cause for adjudication of the issues raised by the pleadings that had not yet been determined.

{¶ 8} The cause is now before this court upon the allowance of a discretionary appeal and cross-appeal.

———————————

*John Woliver,* for appellees and cross-appellees Clermont County ADAMH Board et al.

*Betty D. Montgomery,* Attorney General, *Jeffrey S. Sutton*, State Solicitor, and *Simon B. Karas*, Deputy Chief Counsel; *Crabbe, Brown, Jones, Potts & Schmidt* and *Luis M. Alcalde*, Special Counsel, for appellants Michael Hogan, Director, and the Department of Mental Health.

*Frank J. Wassermann,* for appellees and cross-appellees individual plaintiffs.

*Martin, Browne, Hull & Harper, David A. Weaver* and *Regina Watson,* for appellee and cross-appellant Alliance for Stable Client Care.

*Stege, Hickman & Lowder Co., L.P.A., Franklin J. Hickman* and *Janet L. Lowder,* for appellee and cross-appellant Ohio Coalition of ADAMH/CMH Boards.

*Rittgers & Mengle* and *John Mengle,* for appellee Warren/Clinton County and Brown County ADAMH Boards.

*Cutright & Cutright* and *James K. Cutright,* for appellee Paint Valley ADAMH Board.

*Santen & Hughes* and *Robert S. Kaiser,* for Homeless Hotline of Cincinnati.

*Herman S. Whitter* and *Linda K. Fiely,* urging reversal for *amicus curiae,* Ohio Civil Service Employees Association, AFSCME Local 11, AFL-CIO.

———————————

**MOYER, C.J.**

4

**{¶ 9}** In its present posture this case presents the sole issue whether the trial court erred in declaring that the Director of Mental Health failed to comply with the requirements of R.C. 5119.62(B)(2) during fiscal years 1993, 1994, and 1995.

**{¶ 10}** R.C. 5119.62(B) provides in part:

"(1) The director, in consultation with relevant constituencies as required by division (A)(11) of section 5119.06 of the Revised Code, shall establish a formula for allocating to boards of alcohol, drug addiction, and mental health services appropriations from the general revenue fund for the purpose of local management of mental health services as this purpose is identified in appropriations to the department of mental health in appropriation acts. The formula shall include as a factor the number of severely mentally disabled persons residing in each alcohol, drug addiction, and mental health service district and may include other factors, including, but not limited to, the historical utilization of public hospitals by persons in each service district. The appropriations shall be allocated to each board in accordance with the formula but shall be distributed only to those boards that elect the option provided under division (B)(3)(a) of this section.

"(2) The director shall allocate each fiscal year to boards of alcohol, drug addiction, and mental health services for services to severely mentally disabled persons a percentage of the appropriations to the department from the general revenue fund for the purposes of hospital personal services, hospital maintenance, and hospital equipment as those purposes are identified in appropriations to the department in appropriation acts. After excluding funds for providing services to persons committed to the department pursuant to section 2945.38, 2945.39, 2945.40, 2945.401, 2945.402, or 5139.08 of the Revised Code, the percentage of those appropriations so allocated each year shall equal ten per cent in fiscal year 1990, twenty per cent in fiscal year 1991, forty per cent in fiscal year 1992, sixty per cent in fiscal year 1993, eighty per cent in fiscal year 1994, and one hundred per cent in fiscal year 1995 and thereafter. The amounts so allocated shall be transferred from the appropriations for the purposes

of hospital personal services, hospital maintenance, and hospital equipment and credited to appropriations for the purpose of local management of mental health services. Appropriations for the purpose of local management of mental health services may be used by the department and by the boards."

**{¶ 11}** R.C. 5119.62(B) was enacted as part of the Mental Health Act of 1988 ("MHA"), 142 Ohio Laws, Part I, 800-802, and expressly refers to appropriations to the department for specific purposes "as those purposes are identified in appropriations to the department in appropriation acts." By its terms, the statute requires the Director to deduct amounts necessary for the department to provide forensic services and then *transfer* a percentage of the remaining funds "from the appropriations for the purposes of *hospital personal services, hospital maintenance, and hospital equipment*" by *crediting* the specified percentages to a category of appropriations identified as being "for the purpose of *local management of mental health services*." (Emphasis added.)

**{¶ 12}** Because this statute refers to appropriations for specific purposes as "identified in * * * appropriations acts," it is appropriate to examine the appropriations acts actually in effect preceding adoption of the MHA in 1988.

**{¶ 13}** The appropriations act in effect for fiscal years 1985 and 1986 included specific hospital line items corresponding to the terminology used in R.C. 5119.62(B)(2), *i.e.*, line item 334-100, designated for state mental health hospital personal services; line item 334-200, designated for state mental health hospital maintenance; and line item 334-300, designated for state mental health hospital equipment. 141 Ohio Laws, Part II, at 2949-2950. Appropriations to the department to fund support services at the local level were contained in various other separate line items, *e.g.*, line items 335-502 (community mental health programs), 335-503 (community forensic services), and 335-508 (services for the severely mentally disabled). *Id.* There was no line item designated "local management of mental health services."

6

**{¶ 14}** The biennial appropriations act for fiscal years 1987 and 1988, that being the act in effect at the time the MHA was enacted, again included separate line items 334-100, 334-200 and 334-300 designated for state hospital personal services, maintenance, and equipment, respectively. In this appropriations act, however, a new line item, 335-408, "line item 408,"[2] was added for the first time and bore the designation "local management of mental health services." Am.Sub.H.B. No. 171, 142 Ohio Laws, Part II, at 2482-2483. The appropriations act explained the purpose of the new line item 408 as follows: "The foregoing appropriation item 335-408, Local Management of Mental Health Services, shall be used by the Department of Mental Health for planning and preparation related to *a restructuring of the state and community mental health systems*." (Emphasis added.) 142 Ohio Laws at 2484. Significantly, it was this appropriations act, including specifically designated line items for state hospital "personal services," state hospital "maintenance," state hospital "equipment" and "local management of mental health services," that was in place when the Mental Health Act of 1988, including R.C. 5119.62(B), was adopted.

**{¶ 15}** In view of the existence of appropriations line item designations that paralleled exactly the language used in the statute at the time of its enactment, we conclude that the meaning of R.C. 5119.62(B)(2) was plain at the time it was enacted. R.C. 5119.62(B)(2) was a mandate to the Director to adjust the appropriations amounts that would be contained in future appropriations act line items 334-100, 334-200 and 334-300 by (1) deducting funds necessary for forensic purposes from the total amount of state hospital funds included in those line items, (2) applying the appropriate percentages as specified in R.C. 5119.62(B)(2) for each year during the period 1990 to 1995 to the remainder of the state hospital appropriations included in those line items, and (3) transferring the resulting amount into appropriations identified as being for "local management of mental health services," *i.e.*, the new line

---

2. In subsequent appropriations acts this line item was identified as line item 334-408 rather than 335-408. In this opinion the term "line 408" is used to specify either line 334-408 or 335-408 as is applicable.

item 408 appropriations. That is, R.C. 5119.62(B)(2) was enacted to provide a mechanism to adjust and finally determine the total dollar amounts of four specifically identified appropriations act line items, all of which were used to provide services to severely mentally disabled people.

{¶ 16} The statute contemplated both the continuation of the three state hospital line items during the six-year phase-in period and retention by the department of a decreasing amount of those funds during that same period. As funds remaining in the three state hospital line items would not be "allocate[d] each fiscal year to boards of alcohol, drug addiction, and mental health services for services to severely mentally disabled persons," R.C. 5119.62(B)(2), those funds would not be subject to further allocation and distribution pursuant to R.C. 5119.62(B)(1) or subject to the planning authority of the state's ADAMHS/CMH boards which exists pursuant to R.C. 340.03.

{¶ 17} The statute further contemplated that, at the end of the phase-in period in 1995, the total of the three hospital line item appropriations, excepting only a portion representing funds necessary to provide mental health services to forensic patients, would be deemed included in the "local management of mental health appropriations" line item, as one hundred percent of the three hospital line items (minus only funds for forensic services) would then be transferred to the latter appropriations line item. "Spending" of the appropriations in that fund would then be accomplished in accordance with plans developed by ADAMHS/CMH boards and approved by the department, as set forth in other sections of the MHA. See, *e.g.*, R.C. 5119.61, 5119.62(B)(1), 5119.62(B)(3), 5119.62(B)(4), and 5119.62(D).

{¶ 18} It is helpful to consider what R.C. 5119.62(B)(2) does *not* do. It does not require the Director to allocate or distribute funds to individual boards, and does not provide a mechanism to divide the total amount of "local management of mental health services" funds between all the ADAMHS boards of the state. It does not establish the amount of "local management of mental health services" appropriations any individual ADAMHS board should receive. Although the final sentence of

8

division (B)(2) provides that "[a]ppropriations for the purpose of local management of mental health services may be used by the department and by the boards," division (B)(2) is silent as to the issue of determining how "usage" of those funds would be made by the department *vis-a-vis* the ADAMHS boards.

{¶ 19} In short, when it was adopted, R.C. 5119.62(B)(2) simply determined the total amount of general revenue funds to be included in the new appropriations act line item designated as being for "local management of mental health services." The methodology by which the funds contained in that line item were to be allocated and distributed to each of the state's ADAMHS/CMH boards was established by other statutory provisions of the Revised Code.

{¶ 20} However, beginning with the appropriations act for fiscal years 1989 and 1990 the General Assembly changed its designations of appropriations for mental health purposes. Thereafter, the appropriations acts failed to include line item appropriations specifically designated for state hospital personal services, maintenance, and equipment, and no line items equivalent to 334-100, 334-200 and 334-300 were included. See Am.Sub.H.B. No. 111, 143 Ohio Laws, Part II, at 2755-2756; Am.Sub.H.B. No. 298, 144 Ohio Laws, Part III, 4616-4617; Am.Sub.H.B. No. 152, 145 Ohio Laws, Part III, at 4487-4488. Nor did subsequent appropriations acts include a line item labeled as designated for purposes of "local management of mental health services." *Id.* Instead, line item 408, which previously bore the title "local management of mental health services," was redesignated as being for "state *and* community mental health services." (Emphasis added.) The General Assembly explained the purpose of the new appropriations line item as being for "state mental health hospital personal services, maintenance, and equipment [analogous to prior line items 334-100, 334-200, and 334-300]; [*and*] state-operated community services; *and* community mental health board contracted services." (Emphasis added.) *Id*.

{¶ 21} Thus, the General Assembly determined that, for fiscal year 1989-1990, the previously separate line items designated for state mental health hospital

personal services, maintenance, and equipment would be consolidated into the new single line item 408. However, the General Assembly did not amend the language of R.C. 5119.62 to reflect this consolidation. Nor did the General Assembly indicate the proportion of the consolidated "state and community mental health services" funds, line item 408 funds, which were to be considered appropriations for the purpose of funding state mental hospitals, prior line items 334-100, 334-200, and 334-300. Nor did the General Assembly advise whether new line item 408 should be deemed equivalent in its totality to the prior "local management of mental health services" line item, or whether, for purposes of applying R.C. 5119.62, only that portion of line item 408 representing appropriations for state-operated community services and community mental health board contracted services (which represent expenditures indeed local in nature) would be deemed equivalent to the prior "local management" line item.

{¶ 22} Because appropriations acts subsequent to that for fiscal years 1987-1988 no longer included separate line item appropriations specifically designated for state hospital personal services, maintenance, and equipment, the Director technically could no longer implement the mandate of R.C. 5119.62(B)(2) to "transfer" amounts from appropriations specifically designated for those purposes. Similarly, because subsequent appropriations acts no longer included line item appropriations designated for the purpose of funding "local management of mental health services" the Director could no longer "credit" appropriations from other line items to such a line item, as contemplated by the statute. Accordingly, ambiguity was created as to the proportion of the consolidated line item 408 funds to be considered as being equivalent to the three prior hospital line items, and thus subject to the percentage multipliers set forth in R.C. 5119.62(B)(2).

{¶ 23} Thus, at the time the statute was adopted the phrases "appropriations for the purposes of hospital personal services, hospital maintenance, and hospital equipment" and "appropriations for the purpose of local management of mental health

services" in R.C. 5119.62(B) had a particularized meaning, that being to identify specific appropriation act line items. Removal of the line items specifically referred to in R.C. 5119.02(B)(2) from appropriations acts enacted subsequent to fiscal years 1989 and 1990 made literal implementation of R.C. 5119.02(B)(2) infeasible, creating ambiguity where none had previously existed. Elimination of the previous line item designations also fostered uncertainty as to the meaning of the language of R.C. 5119.62 and created an environment in which the plaintiff boards could credibly argue that the language of that statute should be construed in a general, rather than particularized, sense.

{¶ 24} The legislative history preceding enactment of the Mental Health Act of 1988 clearly establishes, and the parties generally agree, that a primary goal of the Mental Health Act of 1988 was to eliminate the then-existent dual system of mental health care in which mentally ill people were cared for either in state hospitals or in the community, but rarely received care which was coordinated between the two entities. Thus, one goal of the MHA was to create an "integrated" mental health system in which services to mentally ill Ohioans would be unified and coordinated between state and local service providers. The department acknowledges that the legislative intent of the MHA was to encourage the "deinstitutionalization" of Ohio's mentally ill patients by reducing average state psychiatric hospital patient populations and to develop new community-based (local) mental health programs.

{¶ 25} The MHA encouraged local mental health boards to assume a greater degree of financial and legal responsibility for managing the mental health needs of the individuals residing in its district by providing those boards with the opportunity to become primarily responsible for planning and delivering the most clinically appropriate and cost-effective services to severely mentally disabled persons resident in each locality. Accordingly, as pointed out by appellees Clermont County ADAMH Board et al., local boards must "assume the responsibility of providing appropriate treatment to those committed to [their] care." See R.C. 5122.15(C)(4) and (D). This

goal of the MHA was frequently summarized during the legislative process as being the creation and implementation of policies whereby, as explained by a witness for the department, mental health services funds would "follow the patient" rather than the patient following the funds.

{¶ 26} As previously noted, R.C. 5119.62(B)(1) governs allocation of "appropriations from the general revenue fund for the purpose of local management of mental health services *as this purpose is identified in appropriations to the department of mental health in appropriations acts.*" (Emphasis added.) In view of this legislative history it would be absurd to believe that the General Assembly intended that no funds be transferred to ADAMHS/CMH boards pursuant to R.C. 5119.62(B)(1) in that no line item appropriations designated "for the purpose of local management of mental health services" existed subsequent to the 1989-1990 appropriations act. Similarly, it would be unreasonable to believe that the General Assembly intended to preclude the transfer of state hospital funds to ADAMHS/CMH boards when it deleted line items 100, 200 and 300, and changed the name of line item 408 from "local management of mental health services" to "state and community mental health services."

{¶ 27} Rather, the legislative history of the MHA clearly indicates that it was the intent of the act that determination of where and how nonforensic mentally disabled patients would be treated was to be gradually shifted from the department to the state's ADAMHS/CMH boards over a six-year period in furtherance of the principle that mental health funds should "follow the patient" rather than "the patient follow the funds." At the end of that six-year period, state hospitals would be funded primarily as a result of payments made to the department by ADAMHS and CMH boards (although those payments would be made by way of accounting transfers rather than actual funds transfers). See R.C. 5119.62(B)(3)(a), providing that "[t]he department *shall retain and expend* the funds projected to be utilized for state hospitals and other state-operated services." (Emphasis added.) The trial court and the court

12

of appeals correctly recognized that the intent underlying the MHA was that local ADAMHS/CMH boards, not the department, would determine the number of patients to be served by the state's mental hospitals.

{¶ 28} All parties and the courts below have assumed *sub silentio* that, during the six-year phase-in period beginning in 1989, the total amount of nonforensic funds contained in line item 408 was subject to application of the annual percentage reallocations contained in R.C. 5119.62(B)(2). That assumption was not necessarily required by R.C. 5119.62(B)(2) during the six-year phase-in period. Until the expiration of that period the statute contemplated the retention by the department of a percentage of funds from the three separate hospital appropriations line items only. During the phase-in period, however, the department would not have been entitled to retain any percentage of that component of the consolidated line item for "state and community mental health services" representing prior appropriations for "local management of mental health services."

{¶ 29} Thus, both the department and the ADAMH boards agreed that during the phase-in period the entire amount of net line item 408 funds would be deemed subject to the percentage formulas set forth in R.C. 5119.62(B)(2). We find this consensus interpretation to be consistent with the intent of the MHA. Nevertheless, the six-year phase-in period has now expired, and the percentage reductions contained in R.C. 5119.62(B)(2) no longer serve a significant purpose. R.C. 5119.62(B)(2) currently serves the purpose of establishing that all net line item 408 funds, minus only funds necessary for forensic purposes, are to be allocated and distributed to the state's ADAMH/CMH boards pursuant to R.C. 5119.62(B)(1) and other relevant statutory provisions.

{¶ 30} We conclude that, subsequent to the General Assembly's change of language in appropriations acts beginning with the 1989-1990 biennium, R.C. 5119.62(B)(2) establishes (1) that the department has the right to deduct an amount appropriate for use in funding forensic services from line item 408 ("state and

community mental health services"), and (2) during the six-year phase-in period between 1990 and 1995, the department could retain a decreasing percentage of the remaining line item 408 funds pursuant to its sole discretion, irrespective of the plans submitted by the ADAMHS/CMH boards. We hold that R.C. 5119.62(B)(2) establishes the amount of state general revenue funds appropriated to the Department of Mental Health for funding state mental hospitals that the department must allocate and distribute to the alcohol, drug and mental health services boards pursuant to a formula devised by the department in its discretion according to R.C. 5119.62(B)(1) and other relevant statutory provisions, for purposes of providing services to severely mentally disabled persons.

{¶ 31} The parties remain in disagreement as to whether the department failed to properly "allocate" and "distribute" those net line item 408 funds. That issue, however, cannot be resolved based on R.C. 5119.62(B)(2) alone. It requires consideration of the Mental Health Act of 1988 as a whole.

{¶ 32} The trial court declared that "R.C. 5119.62(B)(2) requires the Department of Mental Health to allocate and make available for distribution 100% (80% for FY 1994) of the non-forensic 408 monies to *each* ADAMHS Board consistent with a formula established under R.C. 5119.62(B)(1)." The trial court's declaration was correct insofar as it recognized that R.C. 5119.62(B)(2) requires the Director to allocate and distribute one hundred percent of 1995 nonforensic line item 408 monies pursuant to R.C. 5119.62(B)(1) and other relevant statutes. However, R.C. 5119.62(B)(2) is not relevant to determine what portions of the total nonforensic line item 408 monies must actually be *distributed* to *each* of the state's ADAMHS/CMH boards. See R.C. 5119.62(B)(1) ("[t]he appropriations shall be *allocated* to each board in accordance with the formula but shall be *distributed* only to those boards that elect the option provided under division [B][3][a] of this section."). (Emphasis added.)

{¶ 33} The trial court further declared that "the amount distributed to each Board may be reduced only by the reasonable cost of the Board's projected state hospital utilization and State Operated Services (SOS) utilization."[3] Because R.C. 5119.62(B)(2) does not govern "distribution," we do not agree that this conclusion is mandated by R.C. 5119.62(B)(2). However, the interpretation of that statutory provision was the sole issue before the trial court subsequent to its bifurcation order. The trial court's conclusion that the state had failed to distribute the required full amount of funds to the state's collective ADAMHS/CMH boards may have been correct insofar as the state's allocation and distribution formulas implemented pursuant to the other portions of the statutory scheme resulted in usurpation of the ADAMHS/CMH boards' discretionary authority as to how much of its allocated funds would be spent on state hospital inpatient costs. However, the trial court erred in holding that such a determination could be made based on the language of R.C. 5119.62(B)(2) in isolation.

{¶ 34} Because the department has consistently recognized its obligation to allocate and distribute the entire amount of nonforensic line item 408 appropriations according to other provisions of the Revised Code, including R.C. 5119.62(B)(1), we conclude that the trial court erred in declaring the department to have been in violation of R.C. 5119.62(B)(2). We find moot that part of the trial court's order enjoining the department from implementing its allocation plan for fiscal year 1995.

{¶ 35} The cause is remanded to the trial court to determine those issues raised in the pleadings which have not yet been considered and which still present a case and controversy. On remand, and to the extent that ambiguity exists in those divisions of R.C. 5119.62 not before this court in the present appeal, the trial court should endeavor to interpret those provisions to effectuate the intent of the General Assembly, avoid

---

3. "State operated services" refers to services provided by state employees at the local level rather than in state mental hospitals. R.C. 5119.62(B)(3).

an unreasonable result, and achieve a just and reasonable outcome. See *State ex rel. Cooper v. Savord* (1950), 153 Ohio St. 367, 41 O.O. 396, 92 N.E.2d 390, paragraph one of the syllabus; *Gulf Oil Corp. v. Kosydar* (1975), 44 Ohio St. 2d 208, 73 O.O. 2d 507, 339 N.E.2d 820, paragraph two of the syllabus.

> *Judgment affirmed in part,*
> *reversed in part*
> *and cause remanded.*

RESNICK, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

DOUGLAS and COOK, JJ., concur in judgment only.

_____

**COOK, J., concurring in judgment only.**

{¶ 36} Because the trial court's bifurcation order prevents this court from determining whether the Director of Mental Health violated any statutory obligation other than that imposed by R.C. 5119.62(B)(2), the syllabus language suggesting a degree of "discretion" in the Director's role under R.C. 5119.62(B)(1) is advisory. While I express no opinion as to the accuracy of the majority's limited interpretation of R.C. 5119.62(B)(1), I believe that the interpretation is an invalid exercise of our judicial authority. Accordingly, I concur in judgment only.

DOUGLAS, J., concurs in the foregoing opinion.

_____