JOURNAL ENTRY AND OPINION
{¶ 1} Paintiffs-appellants, William and Ruby Bosher, husband and wife, appeal from the decision of the trial court which affirmed the City of Euclid's Board of Tax Review's determination that State of Ohio "Super Lotto" lottery winnings are subject to Euclid's municipal income taxation. For the reasons adduced below, we reverse and order the wrongfully assessed and collected taxes returned immediately, with interest, to the taxpayers herein.
 {¶ 2} A review of the record on appeal indicates that appellants, while residents of the City of Euclid, Ohio, in 1998, won approximately $3,500,000 on one ticket of Super Lotto, collecting their prize in a lump sum distribution. The appellants dutifully paid approximately 40% of their winnings to the United States and State of Ohio in the form of federal and state income taxes.
 {¶ 3} Thereafter, the City of Euclid notified appellants that municipal income tax in the amount of $102,378.81 was due on the lottery winnings for tax year 1998. Appellants contested this income tax assessment, arguing through counsel that the Euclid Codified Ordinances regarding taxes did not include lottery winnings as taxable income. The City of Euclid Tax Administrator denied appellants relief from the assessment. Under protest, appellants paid the assessment, and then filed an appeal of the Tax Administrator's determination with the City of Euclid Income Tax Board of Review, seeking a return of the wrongfully assessed taxes on their lottery winnings.
 {¶ 4} The Board of Review, after hearing, affirmed the Administrator's determination that the lottery winnings were taxable income for purposes of Euclid's taxing authority, stating in pertinent part:
 {¶ 5} As noted above, under the City Tax Code, taxable income includes the net profits from the operation of a business, profession or other enterprise or activity. Section 791.02(q), Euclid Codified Ordinances. Section 791.03 of the City's ordinance then imposes the tax on the following income:
 {¶ 6} ". . . (c)(1) on the portion attributable to the City on the net profits earned on or after January 1, 1967, of all resident unincorporated business entities or professions or other activities, derived from sales made, work done, services performed or rendered and business or other activities conducted in the City; . . ."
 {¶ 7} The purchase of lottery tickets, which for all intents and purposes, constitutes gambling, is clearly an "activity", (sic) conducted in the City, the income from which is subject to the City's income tax.
 {¶ 8} The taxpayers suggest that the City need only amend its ordinance so as to specifically include lottery winnings as taxable income. However, the City's Tax Code, at Section 791.10, Euclid Codified Ordinances, entitled Sources of Income Not Taxed, sets forth a variety of sources of income specifically exempted from the municipal income tax. Thus, while the City's income tax predates the commencement of the Ohio Lottery, and the City has not amended its ordinance to specifically include lottery winnings as taxable income, in like manner, the City's ordinance has not been amended to specifically exclude lottery winnings from the tax in Section 791.10.
 {¶ 9} The general language of the City's ordinance makes income derived from any activity subject to the tax, unless that income is specifically excluded from the tax in Section 791.10. For this reason, it is the opinion of the Board of Review that the Administrator's decision, that the lottery winnings of the taxpayers herein is taxable, is correct, and that decision is AFFIRMED. (Underlining in the original.)
 {¶ 10} Board of Review decision at 3.
 {¶ 11} Appellants appealed the Board of Review's decision to common pleas court pursuant to R.C. 2506.01.
 {¶ 12} Subsequent to briefing by the parties, the trial court, on August 20, 2001, affirmed the Board of Review's decision, concluding that Euclid Codified Ordinances Section 791.02(j),
 {¶ 13} . . . does not restrict the definition of "net profits" to net gains derived from business activities, but instead includes net gains from any other activity. A lottery is an activity. As the Ohio Supreme Court has recognized, lotteries are a "species or form of gambling, distinguishable from other enterprises by the element of chance." Fisher v. Neusser, 74 Ohio St.3d 506, 512 (1995). As such, the winnings received by the Boshers are net profits with the broad definition of Section 791.02(j) of the Tax Code.
 {¶ 14} . . . Under the broad language of the City's Tax Code, lottery winnings are subject to the City's municipal income tax.
 {¶ 15} Journal Vol. 2633, page 105.
 {¶ 16} Appellant timely appealed the trial court's decision to this appellate court.
 {¶ 17} The lone assignment of error presented for review states the following:
 {¶ 18} THE TRIAL COURT ERRED IN AFFIRMING THE TAXATION OF APPELLANTS' LOTTERY WINNINGS AND IN ITS DETERMINATION THAT SAID TAX WAS JUSTIFIED UNDER THE LANGUAGE OF THE CITY OF EUCLID'S INCOME TAX ORDINANCES. THE TRIAL COURT DID NOT CORRECTLY APPLY THE STANDARD ENUNCIATED BY THE OHIO SUPREME COURT THAT TAX REGULATIONS MUST BE STRICTLY CONSTRUED AGAINST THE TAXING AUTHORITY WITH ANY DOUBT RESOLVED IN FAVOR OF THE TAXPAYER.
 {¶ 19} R.C. 2506.04 states that when reviewing an appeal from an order of administrative officers and agencies:
 {¶ 20} The court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion or the court. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code.
 {¶ 21} The language of R.C. 2506.04 was construed by the Ohio Supreme Court in Henley v. Bd. of Zoning Appeals (2000), 90 Ohio St.3d 142,147, as follows:
 {¶ 22} We have distinguished the standard of review to be applied by common pleas courts and courts of appeals in R.C. Chapter 2506 administrative appeals. The common pleas court considers the "whole record," including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence. See Smith v. Granville Twp. Bd. of Trustees
(1998), 81 Ohio St.3d 608, 612, 693 N.E.2d 219, 223, citing Dudukovich v. Lorain Metro. Hous. Auth. (1979), 58 Ohio St.2d 202, 206-207, 12 Ohio Op.3d 198, 201-202, 389 N.E.2d 1113, 1116-1117.
 {¶ 23} The standard of review to be applied by the court of appeals in an R.C. 2506.04 appeal is "more limited in scope." Kisil v. Sandusky
(1984), 12 Ohio St.3d 30, 34, 12 Ohio B.Rep. 26, 30, 465 N.E.2d 848, 852. "This statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on `questions of law,' which does not include the same extensive power to weigh `the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court." Id. at fn. 4. "It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. * * * The fact that the court of appeals, or this court, might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd. (1988), 40 Ohio St.3d 257, 261, 533 N.E.2d 264, 267.
 {¶ 24} Several sections of Euclid's tax code, namely, Euclid Codified Ordinances Sections 791.02(d), (g), (j), and (q), .03, and .10, are relevant to the resolution of this appeal.
 {¶ 25} Euclid Codified Ordinances Section 791.02, a definitions section, states in pertinent part the following:
 {¶ 26} For the purposes of this chapter, the terms, phrases, words and their derivatives used herein shall have the meanings given in this section. The singular shall include the plural, and the masculine shall include the feminine and the neuter.
 {¶ 27} * * *
 {¶ 28} (d) Business means any enterprise, activity, profession or undertaking of any nature, conducted for profit or ordinarily conducted for profit, whether by an individual, partnership, association, corporation or any other entity, excluding, however, all nonprofit corporations which are exempt from the payment of Federal income tax.
 {¶ 29} * * *
 {¶ 30} (g) "Employer" means an individual, partnership, association, corporation, government body, unit or agency, or any other entity, whether or not organized for profit, who or that employs one or more persons on a salary, wage, commission or other basis of compensation.
 {¶ 31} * * *
 {¶ 32} (j) Net profits means a net gain from the operation of a business, profession, enterprise or other activity after provision for all ordinary and necessary expenses either paid or accrued in accordance with the accounting system used by the taxpayer for Federal income tax purposes without deduction of taxes imposed by this chapter, Federal, State, and other taxes based on income, and, in the case of an association, without deduction of salaries paid to partners and other owner.
 {¶ 33} * * *
 {¶ 34} (q) "Taxable income" means wages, salaries and other compensation paid by an employer or employers before any deduction and/or the net profits from the operation of a business, profession, or other enterprise or activity
adjusted in accordance with the provisions of this chapter. (Underline added.)
 {¶ 35} * * *
 {¶ 36} Euclid Codified Ordinances Section 791.03 provides that, after December 1, 1994, a tax of 2.85 percent be imposed on the following income:
 {¶ 37} (c) (1) On the portion attributable to the City on the net profits earned on and after January 1, 1967, of all resident unincorporated
business entities or professions or other activities, derived from sales made, work done, services performed or rendered and business or other activities conducted in the City; (Underline added.)
 {¶ 38} * * *
 {¶ 39} Euclid Codified Ordinances Section 791.10 defines a series of particular sources of income which are not taxed.
 {¶ 40} The City of Euclid's tax code, which pre-dates the enactment of Ohio's lottery, makes no reference to lottery winnings.
 {¶ 41} Appellee, echoing the rationale used by the Board of Review and the trial court, argues that the lottery winnings are taxable because these winnings represent a "net profit" derived from an "other activity" (to-wit, gambling) conducted within the City of Euclid, which activity or net profit is not dependent on being business related. In support of this view, appellee cites generally to Euclid Codified Ordinances Section 791.03(c)(1), and to isolated language within Euclid Codified Ordinances Section 791.02(q), stating, "ECO Section 791.02(q) defines `taxable income' as `wages . . . and/or the net profits from the operation of a business, profession, or other enterprise or activity . . .'". See appellee's brief at 1. Appellants, on the other hand, maintain that the relevant sections of the City's tax code, which were relied upon by the trial court, must be read in pari materia and require through their general context a business related aspect for the taxation of net profits, an aspect which is lacking in lottery winnings. Both of the parties' arguments require that we construe the ordinances in question.
 {¶ 42} In divining statutory interpretation, the following provides guidance:
 {¶ 43} The principles of statutory construction require courts to first look at the specific language contained in the statute, and, if unambiguous, to then apply the clear meaning of the words used. Provident Bank v. Wood (1973), 36 Ohio St.2d 101, 105-106, 65 Ohio Op.2d 296, 298, 304 N.E.2d 378, 381. Furthermore, "strict construction of taxing statutes is required, and any doubt must be resolved in favor of the citizen upon whom or the property upon which the burden is sought to be imposed." Gulf Oil Corp. v. Kosydar
(1975), 44 Ohio St.2d 208, 73 Ohio Op.2d507, 339 N.E.2d 820, paragraph one of the syllabus.
 {¶ 44} Roxane Laboratories, Inc. v. Tracy (1996), 75 Ohio St.3d 125,127, 661 N.E.2d 1011, 1012.
 {¶ 45} We conclude that the word "other", as used in Euclid Codified Ordinances Section 791.03(c)(1), is unambiguous, and was read by the Board of Review and the trial court without regard to the surrounding business and profession related terms. Other must be given its plain meaning. Roxane, supra. In legal matters, Black's Law Dictionary (6 Ed. 1991) 761, defines other as follows:
 {¶ 46} Other. Different or distinct from that already mentioned; additional, or further. Following an enumeration of particular classes "other" must be read as "other such like," and includes only others of like kind and character. (Italicization added.)
 {¶ 47} Euclid Codified Ordinances Section 791.03(c)(1) applies to "net profits" of resident "unincorporated business entities or professions or other activities." Applying the legal definition of "other" to this phrase converts it to read "unincorporated business entities or professions or other such like activities"; the "other such like activities" being the previously enumerated classes of business entities or professions. This business interpretation is buttressed by the remaining business related language in Section 791.03(c)(1) which mandates that the net profits be "derived from salesmade, work done, services performed or rendered and business or other activities conducted in the City; * * *." Again, the enumerated classes preceding the use of "other" clearly connotes that the net profits be derived from a business exercise of some sort. For similar reasons, a commercially related, or business, exercise is contemplated by the language defining "net profits" and "taxable income." See Euclid Codified Ordinances Section 791.02(j) and (q). Consequently, the lottery winnings were not properly taxable as income from a non-commercial activity.
 {¶ 48} Appellee next argues that even if the City's tax code only contemplated business related income as taxable, then "the broad definition of `business' in the Euclid Tax Code would be sufficient to allow the taxation of gambling income" because playing the lottery is "conducted for profit or ordinarily conducted for profit." See appellee's brief at 4. This view, that lottery winnings constitute business income, is not supported by the State of Ohio's own tax code, which identifies lottery winnings as nonbusiness income. See R.C. 5747.01(C). Furthermore, the record does not demonstrate that the appellants, who testified before the Board of Review that they played the Super Lotto game once a week while allowing the lottery computer to select their numbers at random, see Board of Review hearing transcript at 16, were engaged in gambling as a professional commercial activity with the aim of turning a profit. While one who plays the lottery may hope to win more than he loses, it is patently unreasonable to suggest that playing the Super Lotto, where the odds of winning are infinitesimal being millions to one[1], is conducted by the ordinary player to turn a profit. The well-known fact that the lottery itself regularly turns a profit of hundreds of millions of dollars, and returns this profit to Ohio's general fund to support education purposes, is evidence that its expenses (i.e., winning ticket payouts, agent commissions, and administrative expenses) are less than the amounts it takes in (i.e., sales or amounts wagered)[2]; if there is an intent to operate a profit, it seems that the individual bettor is not the entity in the lottery transaction who, given the hugely lopsided odds which favor the lottery operator, reasonably possesses this intent.
 {¶ 49} Accordingly, appellants' assignment is well taken as the trial court's judgment is unreasonable and contrary to law.[3] Appellee is ordered to immediately return the wrongfully assessed and collected taxes to appellants-taxpayers, with interest, at a rate to be determined by R.C. 5703.47, "from the date of the overpayment until the date of the refund of the overpayment." See R.C. 718.12(D) and 5703.47.[4]
Judgment reversed.
This cause is reversed.
It is, therefore, considered that said appellant(s) recover of said appellee(s) their costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
PATRICIA A. BLACKMON, J., CONCURS; KENNETH A. ROCCO, P.J., DISSENTSWITH DISSENTING OPINION ATTACHED.
[1] For example, Ohio's present Super Lotto game, Super Lotto Plus, begun July 15, 2000, has odds of 1 in 13,983,816. See Ohio Lottery Commission website, http://www.ohiolottery.com/, April 10, 2002; U.S. Lottery website, http://www.uslottery.com/, April 10, 2002. These odds would be reduced somewhat for a Super Lotto game played in 1998 due to the fact that a player in 1998 had to pick 6 correct numbers out of a possible universe of 47 numbers to win the grand prize, whereas the present Super Lotto Plus player has to pick 6 numbers from a universe of 49 numbers to win the grand prize.
[2] According to information published on April 10, 2002 on the Ohio Lottery Commission's website, http://www.ohiolottery.com/, the lottery began in August, 1974, and the Super Lotto game began in April, 1983. In fiscal year 2001 alone, the lottery had sales of $1.919 Billion, paid out prizes in the amount of $1.112 Billion, paid operating expenses and agent commissions of $228.6 Million, and transferred $637 Million to education. In fiscal year 1998, the lottery transferred $724 Million to education on gross sales of $2.426 Billion; Super Lotto (and its associated "kicker" game which began on April 30, 1988) accounted for $445.4 Million in sales in fiscal year 1998. For fiscal years 1992 through 2001, inclusive, the Super Lotto game (and its associated "kicker" game) accounted for 22.19% of lottery sales (19.32% for Super Lotto and 2.87% for kicker). Since the lottery's inception, it has transferred a total of approximately $11.1 Billion to education in the State of Ohio.
[3] This opinion should not be read to say that Ohio's municipalities may not collect income tax on lottery winnings. Municipal taxation of lottery winnings is permitted. See Fisher v. Neusser, supra. The City of Euclid would have to simply amend its tax code to include lottery winnings as taxable income.
[4]{¶ a} R.C. 5703.47 provides:
{¶ b} § 5703.47 Federal short-term rate defined; computation of statutory interest rate for following year.
{¶ c} (A)As used in this section, "federal short-term rate" means the rate of the average market yield on outstanding marketable obligations of the United States with remaining periods to maturity of three years or less, as determined under section 1274 of the "Internal Revenue Code of 1986," 100 Stat. 2085, 26 U.S.C. § 1274, for July of the current year.
 (B) On the fifteenth day of October of each year, the tax commissioner shall determine the federal short-term rate. For purposes of any section of the Revised Code requiring interest to be computed at the rate per annum required by this section, the rate determined by the commissioner under this section, rounded to the nearest whole number per cent, plus three per cent shall be the interest rate per annum used in making the computation for interest that accrues during the following calendar year. (Italicization added.)