OPINION
On January 29, 1999, the Stark County Grand Jury indicted appellant, Andrew Paul Esway, III, on one count of retaliation in violation of R.C. 2921.05(A). Said charge arose from an altercation between appellant and Assistant City of Canton Law Director Gene O'Byrne. Apparently, appellant attacked Mr. O'Byrne after he discovered Mr. Byrne was a "prosecutor." On March 17, 1999, appellant pled no contest. The facts were stipulated to and read into the record and subsequently memorialized in a joint modification of record filed May 19, 1999. By judgment entry filed March 25, 1999, the trial court found appellant guilty as charged and sentenced him to one year in prison. Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:
I THE TRIAL COURT ERRED IN FINDING DEFENDANT-APPELLANT GUILTY OF RETALIATION BASED UPON THE STIPULATED FACTS PRESENTED TO THE COURT.
 I
Appellant claims the trial court erred in finding him guilty of retaliation. We agree. The offense of retaliation is set forth in R.C. 2921.05 and states as follows: (A) No person, purposely and by force or by unlawful threat of harm to any person or property, shall retaliate against a public servant, a party official, or an attorney or witness who was involved in a civil or criminal action or proceeding because the public servant, party official, attorney, or witness discharged the duties of the public servant, party official, attorney, or witness.
(B) No person, purposely and by force or by unlawful threat of harm to any person or property, shall retaliate against the victim of a crime because the victim filed or prosecuted criminal charges.
(C) Whoever violates this section is guilty of retaliation, a felony of the third degree.
Following appellant's no contest plea, the parties stipulated on the record to the following facts: Ah, but for the Court's purpose today, Mr. Esway is charged with, on January 20 of 1999 assaulting Assistant City of Canton Prosecutor Eugene O'Bryne, um, at an establishment in Canton, Ohio, that Mr. Esway had approached Mr. O'Byrne in the bar area of John's Bar in Canton, had entered a conversation with him, calling him `The prosecutor,' Mr. O'Byrne denied that, um, continued with statements such as he was the prosecutor and that he would have his job, um, and that — at some point Mr. O'Byrne had gone to the men's room. When he exited the men's room, Mr. Esway apparently took a swing at him and went after his throat, subsequently ripping Mr. O'Byrne's shirt and Mr. Esway was subdued by two people in the bar.
Um, Mr. Esway continued with comments to the arresting officer that, ah, he wanted to meet the officer and the prosecutor, that the defendant admitted to throwing the punch and had repeated several times that this had something to do with a family member being prosecuted, although that has not been made clear, ah, and stating also that this defendant felt that the prosecutors are putting innocent people in jail, that he knew where the prosecutor and the officer worked and that he wanted to confront them when he had his handcuffs off, basically.
Ah, the State of Ohio has not confirmed any particular case in which Mr. Eugene O'Byrne would have been involved with Andrew Esway or a particular family member, although there may be no way of knowing, um, in what way Mr. Esway knew Mr. O'Byrne had been a prosecutor.
T. at 12-13.
In the modification of record filed May 19, 1999, appellant admits to an assault in violation of R.C. 2903.13. However, appellant disputes the offense of retaliation because there was no evidence that Mr. O'Byrne had ever prosecuted a case against appellant or a family member or that Mr. O'Byrne had any involvement in a criminal case against appellant or a family member. The attack against Mr. O'Byrne appeared to be leveled against all prosecutors in general who put people in jail. Appellant argues the retaliation statute requires that his conduct be leveled against a prosecutor who tried a specific case. The state argues the statute can be invoked against anyone who attacks individuals who are carrying out their responsibilities as public servants regardless of past history. In construing a statute, we must first consider whether by its very language the statute is ambiguous. Shover v. Cordis Corp. (1991), 61 Ohio St.3d 213. If a statute is ambiguous, the court may look to other sources such as legislative history or other law to determine the intent of the legislature. R.C. 1.49. As cited supra, R.C. 2921.95(A) defines the offense of retaliation as "purposefully and by force * * * retaliate against * * * an attorney who was involved in a civil or criminal action or proceeding because the * * * attorney, * * * discharged the duties of the public serveant, * * * attorney * * *. Mr. O'Byrne is an assistant law director for the City of Canton and was not involved in a particular case cited by appellant. The statute does not speak to retaliation against all attorneys who are public servants but of attorneys who "discharge" the duties of a prosecution. In State v. Lambert (June 5, 1998), Montgomery App. No. 16667, unreported, our brethren from the Second District has spoken on the obvious ambiguity of the statute and has summarized the legislative purpose of the statute as follows: The statute at issue, which was introduced as H.B.88 on February 1, 1995, was described as expanding current law concerning intimidation to include retaliation. Ohio Legislative Service Commission, Summary of Discussion on H.B.88, House Judiciary and Criminal Justice Committee, October 4, 1995. In addition, the distinguishing characteristic between intimidation and retaliation was said to be that intimidation occurs before a judicial decision, whereas retaliation occurs after a judicial decision has been rendered. Id. The retaliation statute, therefore, was intended to correspond to the intimidation statute in its effect, save that it is applicable only after judgment has been rendered on the underlying offense. We note that, like the retaliation statute, the intimidation statute imposes no express requirement that the threat be communicated from the one threatening directly to the person threatened.
Based upon the legislative history and the past tense use of the word "discharge" in R.C. 2921.05(A), we find that in order to sustain a conviction under said statute, there must be some proof the attack was precipitated by a specific civil or criminal case involving the victim. The sole assignment error is granted.
The judgment of the Court of Common Pleas of Stark County, Ohio is vacated and this case is remanded.
By Farmer, J. Wise, P.J. and Hoffman, J. concur.