OPINION
{¶ 1} Appellant, Jacqueline Adams, who was the guardian of the estate of her mother, Bertina Hards, appeals from the March 15, 2002 judgment entry of the Lake County Court of Common Pleas, Probate Division, in which the trial court ordered appellant to pay $11,855 to the Special Master Commissioner for his fees and expenses.
 {¶ 2} The Lake County Probate Court sua sponte appointed Richard T. Spotz as Special Master Commissioner ("the special master") to resolve the controversy of attorney fees which were requested in a guardianship matter concerning appellant's mother's estate. In re Hards, 11th Dist. No. 2002-L-032, 2003-Ohio-1207, at ¶ 12. The attorney was requesting more than $22,500 in fees, but had already received in excess of $15,000. Id. The special master filed his report on December 5, 2001. In that report, the special master concluded that the amount the attorney had already received was more than enough compensation, and thus, recommended that the application for the expenditure of funds for payment for attorney fees in excess of that amount be denied. The attorney filed objections to the report, which the trial court overruled on February 4, 2002. This court affirmed the judgment of the trial court on appeal. Id. at ¶ 16.
 {¶ 3} On March 5, 2002, the special master filed with the trial court an "Application for Authority to Pay Special Master Commissioner Fees." In that application, the special master requested $11,855 in fees for services performed and expenses advanced for the period from March 21, 2001 through November 30, 2001. The special master also attached an exhibit to the application that contained a brief statement of what he had done during the time period for which he billed. There was no amount of time or hourly rate included in the exhibit. In a judgment entry dated March 15, 2002, the trial court authorized appellant to expend the sum of $11,855 to be paid to the special master for his services and expenses. It is from that entry that appellant timely filed the instant appeal and now advances the following assignments of error:
 {¶ 4} "[1.] A [j]udgment rendered on a [m]otion where there has been [n]o [s]ervice of the [m]otion, and [n]o [n]otice of the [m]otion, to the [p]arty to be charged, and [n]o [h]earing held or [s]cheduled, is VOID PER SE.
 {¶ 5} "[2.] It is an [a]buse of [p]rocess, and a [c]onflict of[i]nterest, for a `Court Appointee' Special Commissioner, to request the [c]ourt to award him his fees, and then to assign such fees to a certain [p]arty as `costs', by use of a clandestine secret [p]ost [d]ecree [m]otion/[a]pplication, with [n]o [s]ervice or [n]otice to the [p]arty to be charged, NO request for a [h]earing, and no [h]earing scheduled norintended; AND, an [e]rror of [l]aw and [a]buse of [d]iscretion for a court to [g]rant such a [s]ecret [m]otion for [f]ees, where there has been [n]o [s]ervice or [n]otice to the [p]arty to be [c]harged, and without a [h]earing, and with no intention of ever having a [h]earing, resulting in an illegal EX-PARTE [p]roceeding and EX-PARTE [j]udgment, a possible Star Chamber Proceeding, and VOID PER SE.
 {¶ 6} "[3.] It is a violation of Due Process and [a]buse of[d]iscretion for a [c]ourt to award [f]ees to a `Court Appointee', where the [m]otion for [f]ees was a secret clandestine [m]otion, with NO [s]ervice or [n]otice to the [p]arty to be charged, NO hearing available, and NO [h]earing intended, and in clear violation of the [s]ervice, [n]otice, [h]earing, and [o]pportunity provisions of the [l]ocal [c]ourt [r]ule on [f]ees which had adopted [Swanson v. Swanson] on [f]ees, and DR 2-106 on [f]ees, and including [Civ.R.] 6(D) and [Civ.R.] 7(B).
 {¶ 7} "[4.] It is a violation of the Equal Protection and DueProcess provisions for a [l]ocal [p]robate [c]ourt to have a `Local Custom' of referring SOME [p]ost [d]ecree MOTIONS involving [i]ssues of law (here, a [m]otion for [r]elief from a [j]udgment), which is aSpecial Judicial Proceeding for a Judge, Referee, or Magistrate, and assigning them to a Non-Judicial `Court Appointee' whose [s]tatutory function is the administration of, and enforcement of existing
[j]udgments; and which `Court Appointee' has no statutory authority to [h]ear [j]udicial [p]roceedings, and then charging the[p]etitioner(here, $11,855) in `Court Appointee' PRIVATE FEES for the privilege of having the [m]otion [h]eard by a [n]on-[j]udicial `Appointee'.
 {¶ 8} "[5.] It is a violation of the Equal Protection and DueProcess and an [a]buse of [d]iscretion for a [c]ourt to have a `Local Custom' of referring SOME [p]ost [d]ecree MOTIONS involving [i]ssues of [l]aw, which is a Special Judicial Proceeding, to a [n]on-judicial `Court Appointee', where there are NO [s]tandards for such appointment; and then granting that `Court Appointee' an absolute license to charge the [appellant] an uncontrolled and unlimited amount of [t]ime and [r]ate for his `[f]ee', and with no opportunity for the [p]arty to be charged to [o]bject to those outrageously excessive fees of $11,855 in [p]rivate[f]ees to a [n]on-[j]udicial `Court Appointee', for the privilege of having a seven hour [h]earing on a [p]ost [d]ecree [m]otion to [v]acate a prior [i]llegal [c]ourt [o]rder.
 {¶ 9} "[6.] It is a [d]enial of Equal Protection of the Law and an [a]buse of [d]iscretion for a [c]ourt to assign SOME Special Judicial Proceedings to a Judge, Referee, or Magistrate, or other [j]udicial[o]fficer, for a [h]earing, and assign SOME OTHERS, to an `Outside Court Appointee', where there are NO standards for such allocations, and where, for no reason other than chance, randomness, a `roll of the dice', or plain `bad luck', one Petitioner has `[f]ree and [o]pen [a]ccess' to the Courts, while another Petitioner (as here) must pay $11,855 in [p]rivatefees for the same privilege of utilizing the [c]ourts to set aside and vacate a prior [i]llegal [c]ourt [o]rder.
 {¶ 10} "[7.] It is an [e]rror of [l]aw and an [a]buse of [d]iscretion for a [c]ourt to charge `[c]osts' of $11,855 in [c]ommissioner [f]ees for [h]earing a [m]otion, where the [o]riginal
allocation of costs was made by a SECRET [m]otion where there was NO [s]ervice, [n]o [n]otice, [n]o [h]earing scheduled, [n]o [h]earing intended, which [m]otion was a clear violation of [l]ocal [c]ourt [r]ules, the Ohio Civil Rules, and Supreme Court mandates on Due Process, and VOID PER SE; AND, where the [m]otion was in violation of the express [l]aws of Ohio as to the requirement of cause, reason, justification, and specificity in a [m]otion, as mandated in GTE,Ademoit [sic], and Sazima, post, and should have been stricken from the [r]ecord, [s]ua [s]ponte."
 {¶ 11} Appellant's assignments of error are interrelated and will, therefore, be addressed in a consolidated manner. To sum up the seven assignments of error, appellant seems to be arguing that she was denied a hearing to determine whether the $11,855 awarded to the special master was reasonable. She contends that she was not served and she did not receive notice of the special master's application to pay his fees. Appellant also claims that the March 15, 2002 judgment was void per se because her due process and equal protection rights were violated. She further asserts that the trial court abused its discretion in awarding the special master the sum of $11,855.
 {¶ 12} According to R.C. 2101.06, the probate judge may appoint a special master commissioner in any matter pending before that judge. Furthermore, under R.C. 2101.07, "[t]he court shall allow such commissioner such fees as are allowed to other officers for similar services * * *." The trial court's decision to compensate the special master is analogous to a trial court's determination of whether to award attorney fees to a party. Szerlip v. Szerlip (June 18, 2001), 5th Dist. No. 00CA000023, 2001 WL 704414, at 2. Hence, such an award must be predicated upon evidence submitted by the movant, which demonstrates the reasonable value of the actual services performed. Farley v. Farley
(1994), 97 Ohio App.3d 351, 355. A proper application for such fees should include a reasonable value of the actual services performed and itemized to the party. Oatey v. Oatey (1992), 83 Ohio App.3d 251, 263.
 {¶ 13} An award of attorney fees is within the discretion of the trial court. Swanson v. Swanson (1976), 48 Ohio App.2d 85, 90. Absent an abuse of discretion, a reviewing court will not reverse the determination of the probate court. In re Wirebaugh (1992), 84 Ohio App.3d 1, 5. Pursuant to DR 2-106(B), "[a] fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee." DR 2-106(B) lists the factors to be considered in deciding the reasonableness of a fee as follows:
 {¶ 14} "(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
 {¶ 15} "(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
 {¶ 16} "(3) The fee customarily charged in the locality for similar legal services.
 {¶ 17} "(4) The amount involved and the results obtained.
 {¶ 18} "(5) The time limitations imposed by the client or by the circumstances.
 {¶ 19} "(6) The nature and length of the professional relationship with the client.
 {¶ 20} "(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
 {¶ 21} "(8) Whether the fee is fixed or contingent."
 {¶ 22} Here, the trial court ordered that the special master be compensated in the amount of $11,855 "for his fees for professional services performed and expenses advanced * * * as outlined on EXHIBIT `A' of the Application for Authority to Pay Trustee Fees filed with this Court." However, we note that there is absolutely no evidence in the record to demonstrate such an amount was reasonable for services performed by the special master. Further, the trial court abused its discretion by failing to consider the factors enumerated in DR 2-106(B).
 {¶ 23} The record demonstrates that the only evidence before the court relating to the special master's fees was Exhibit A, which referenced the dates and a brief statement of what was performed. Based on the record before us, these services were itemized in too little detail for this court to determine what these services entailed. In addition, there was no summary of the hours expended and costs incurred. Because the record lacks necessary findings regarding the reasonableness of the fee award, we reverse and remand this issue to the trial court for a hearing at which the special master shall present evidence as to the reasonableness of the funds requested for his services and at which appellant is notified so that she may be present.
 {¶ 24} As far as appellant's constitutional arguments, the Supreme Court of Ohio has on numerous occasions held that an appellate court should decline to rule on a constitutional issue that is not raised in the first instance in the tribunal below. Shover v. Cordis Corp. (1991),61 Ohio St.3d 213, 220. Appellant raised those issues for the first time on appeal, and they were not presented for consideration below. Since appellant failed to present those issues at the trial level, this court on appeal will not now consider the constitutional issues.
 {¶ 25} For the foregoing reasons, appellant's assignments of error are sustained to the limited extent indicated in relation to the award of the special master's fees and expenses. The judgment of the Lake County Court of Common Pleas, Probate Division, is reversed, and the matter is remanded to the trial court for further proceedings consistent with this opinion.
 {¶ 26} Since we have addressed the merits of the appellant's arguments, we note that appellant's brief submitted to this court lacks a coherent statement of the facts and procedural posture. Additionally, it fails to contain proper legal citations and any semblance of linear narrative. We would advise attorneys in our district that cases are not won or lost through the use of unsubstantiated vituperation. We would also suggest that an attorney carefully consider how his or her comments and allegations fit within the framework of the canon of legal ethics before one finds themselves subject to significantly unpleasant sanctions.
WILLIAM M. O'NEILL, J., CYNTHIA WESTCOTT RICE, J., concur.